(107 App. Div. 384.)

LOGAN et al. v. CONSOLIDATED GAS CO. OF NEW YORK.

(Supreme Court, Appellate Division, Second Department.   August 31, 1905.)

1. CONTRACTS—CONSTRUCTION OF APPLIANCE—ACCEPTANCE BY OWNER—EVIDENCE—LIABILITY FOR LOSS.

A contractor agreed to construct a gas holder and tank under a contract stipulating that the tank would not be accepted until it had been proven water-tight after being filled with water for 30 days, and that the holder should be properly tested and the whole delivered in complete working order.   The tank was so far completed as to be ready for the test, whereupon the owner filled it with water and made the necessary preparations for connecting with the tank and holder when ready for operation. Before the expiration of 30 days after the tank was filled it collapsed. *Held*, that the fact that the owner had made the necessary preparations to use the appliance was no evidence that it had possession and control thereof, so as to make it liable for the loss.

2. SAME—DESTRUCTION OF APPLIANCE CONTRACTED FOR—OWNER'S NEGLIGENCE—EVIDENCE—FINDING.

Where a contractor agreed to construct a gas holder and tank under a contract stipulating that the tank would not be accepted until it had been proven water-tight after being filled with water for 30 days, and the owner, on the completion of the tank, filled it with water, and a few days later the tank collapsed, a contention on appeal that the evidence established as the cause of the destruction of the tank an explosion produced by the owner in filling the tank with foul water, causing the formation of gas

and an explosion, thereby making the owner liable for the loss, could not be sustained in the face of the court's charge that there was no evidence of negligence of the owner causing the destruction.

3. SAME—CONSTRUCTION OF APPLIANCE—CONTRACTOR'S RIGHT TO RECOVER.

A contractor, under a contract for the construction of a gas holder and tank stipulating that he would deliver a completed structure, that the same would not be accepted until tested, and that he would bear and repair all damage to the structure caused by accident, can only recover by showing performance, acceptance, or waiver by the owner, or that complete performance was prevented by the owner; and a total destruction of the appliance without the owner's fault, at a time when the work remaining undone was trivial, does not authorize a recovery under the theory of a substantial performance.

4. SAME—TITLE OF PROPERTY DURING CONSTRUCTION—DELIVERY OF BILLS OF SALE BY CONTRACTOR—EFFECT.

Where a contractor agreed to construct a gas holder and tank under a contract stipulating that he would deliver a completed structure and that the owner would not accept it until tested in a manner prescribed, it was immaterial, on the issue of the contractor's liability for the destruction of the appliance while tested, where the title to the property was during the performance of the contract; and the fact that he delivered bills of sale to the owner as the work progressed did not amount to a modification of the contract, or an acceptance, in the absence of an intention on the owner's part to accept the work or waive any provisions of the contract.

5. SAME—RELEASE OF OBLIGATION—DESTRUCTION OF THING CONTRACTED FOR.

The rule that, where the performance of a contract depends on the continued existence of a thing assumed as the basis of the agreement, the destruction of the thing terminates the obligation, has no application to a case where the thing destroyed is the thing which one of the parties has expressly contracted to construct and deliver.

Appeal from Trial Term, Kings County.

Action by William J. Logan and another against the Consolidated Gas Company of New York. From a judgment for plaintiffs, and from an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, JENKS, RICH, and MILLER, JJ.

David McClure (Thomas Thacher and Henry L. Scheurerman, on the brief), for appellant.

Augustus Van Wyck, for respondents.

MILLER, J. On the 15th day of March, 1898, the plaintiffs, as copartners, and the defendant entered into an agreement in writing by which the plaintiffs as contractors agreed to "well and sufficiently erect and finish, complete and in a good, workmanlike, and substantial manner, under the direction of the chief engineer of the owner and to the satisfaction of said chief engineer, to be evidenced by writing or certificate under his hand, and in accordance with the drawings and specifications signed by said parties and hereto annexed, a quadruple section gas holder, with steel tank and guide frame and other appurtenances," and to "find and provide such good, proper, and sufficient materials and labor of all kinds whatsoever, as well as sufficient apparatus, tools, and machinery, for the completion of all the various parts of such work mentioned in the drawings and specifications * * * within six months after the

time when the foundation to be prepared by the owner for the reception of the said tank and gas holder is sufficiently advanced to allow the contractor to commence work." The agreed contract price was $167,500, 75 per cent. of which was to be paid upon the completion of the work, and its acceptance by the chief engineer of the owner, or in installments of not less than $15,000 as the material was delivered and erected in position, such installments not to exceed 75 per cent. of the cost of the work, to be estimated by the chief engineer of the owner, and the remaining 25 per cent. was to be paid when the holder and its appurtenances had been in satisfactory working order for 60 days. The contract also provided that the usual certificate of the engineer of the owner should be obtained before any payment should become due, and that "the contractor shall also bear and repair all loss or damage to the structure, which may have been caused by accident or otherwise, and on which payments have been made by the owner," and that "no certificate given or payment made under this contract shall be conclusive evidence of the performance of this contract, either wholly or in part, against any claim of the owner to the contrary in any suits or proceedings whatever; nor shall any certificate or payment in any way release the contractor from the complete fulfillment of any portion of his work in the manner prescribed by the drawings, specifications, and contracts." The specifications, which were attached to and made a part of the contract, contained the following provision:

"On completion of the tank, satisfactory test having been made, the company will do all necessary grading. * * * The tank will not be accepted until it has been proven water-tight after being filled with water to its full height and has so remained for thirty days. * * * The holder shall be properly tested, and a trial made by raising each section to its full height by air pressure; the whole to be delivered to the Consolidated Gas Company in complete working order, perfectly gas-tight. * * * The contractors * * * shall repair and make good any damage to the property of the company * * * which may occur during the prosecution of the same, and deliver to the Consolidated Gas Company of the city of New York a gas holder, guide frame, and tank complete in all details, in accordance with the spirit and intent of these specifications and the drawings hereunto annexed."

Thereafter the plaintiffs entered upon the performance of the contract. As the work progressed payments were made upon certificates of the engineer, and bills of sale of the materials used were given by the plaintiffs to the defendant, and on the 3d day of December, 1898, the work had reached such a stage of completion that, pursuant to an arrangement previously made, the plaintiffs notified an employé of the defendant that the tank was ready to be filled with water, whereupon the defendant began pumping water into the tank from the river, and continued until the morning of the 13th of December, when the process of filling the tank was completed. The only work called for by the contract that remained to be done on said 3d day of December consisted of certain tarring in the pit and painting of the holder, the remedying of any defects that might be discovered during the test, and the adjustment of such parts of the apparatus as its operation should demonstrate needed further

adjusting. Between the said 3d and 13th of December several of the plaintiffs' employés were at work finishing the work, calking whatever small "sweats" appeared on the tank, and taking out, shortening, and replacing braces between the posts and girders of the guide frame, which was required by the defendant's engineer. The plaintiffs' foreman and construction engineer were upon the work daily up to and including said 13th, and, when the men quit work for the day at 5 o'clock on said day, the plaintiffs' watchmen were left as usual to guard the entrances to the inclosure within which said structure was being erected. For several days prior to said 13th, the defendant had men employed laying pipe and doing what was necessary to connect the tank and holder with its works when ready for operation; but it does not appear that such connections had been completed. Shortly after 5 o'clock on the afternoon of said 13th of December, the entire structure was reduced to a scrap heap, either because of a collapse caused by the pressure of the 1,000,000 cubic feet of water stored in the tank, or because of an explosion produced by some cause not clearly explained. It is not claimed that the plans and specifications, for which, of course, the defendant was responsible, were inadequate; but, on the contrary, it appears to have been conceded that they were sufficient to have produced a structure able to withstand any pressure which its operation would produce, and afford a factor of safety of three. After the destruction of the structure, the defendant formally demanded of the plaintiffs that they furnish the tank and holder contracted for, while the plaintiffs, insisting that the contract had been performed, demanded of the engineer a certificate to that effect, which was refused, whereupon this action was brought by the plaintiffs, alleging a substantial performance, to recover the balance due upon the contract, and from the judgment in their favor the defendant appeals.

Upon the trial the respective parties sought to account for the destruction of the tank and holder upon two different theories, and each introduced evidence tending to support the theory advanced, to wit: On the part of the plaintiffs, that the collapse resulted from an explosion caused by an electric spark igniting gas collected from the foul water pumped into the tank by the defendant from the river; and on the part of the defendant, that the collapse was due to the weakness of the structure itself, produced by the plaintiffs' failure to comply with the plans and specifications, which required all punched rivet holes to be reamed. The trial court submitted two questions to the jury: First, whether the plaintiffs had performed their contract according to the plans and specifications; and, second, whether the defendant had taken possession on December 3d, and on December 13th had possession and control of the structure, and was then applying it to the use for which it was intended as a gas holder, and not merely submitting it to a test—and charged that, if the jury found in the plaintiffs' favor on both of said propositions, they were entitled to a verdict; otherwise, that the defendant was entitled to a verdict on its counterclaim.

Testing the verdict by this charge, it is manifest that it cannot stand, because there is no evidence whatever that the defendant had either possession or control of the structure for the purpose of applying it to the use for which it was intended as a gas holder, or for any purpose whatever, except to make the test prescribed by the contract. It is not claimed that it had been put to any use whatever. The court distinctly charged the jury that there was no evidence that the defendant had introduced any gas into the holder from its exhauster house, and the mere fact that the defendant was getting ready to use it in case it met the test and worked satisfactorily is no evidence whatever that it then had it in its possession and control for the purpose of applying it to the use for which it was intended. The contract is entirely silent respecting who should make the test; but, giving it the practical construction put upon it by the acts of the parties themselves, it would appear that the defendant was to make the test, the plaintiffs meanwhile to remedy any defects discovered, and to make any readjustments found necessary. It is clear that the plaintiffs contracted, not merely to perform work and furnish materials to the defendant, but to produce and deliver to the defendant a tank and holder in complete working order, perfectly gas-tight. The 30-day water test of the tank had just begun; but it does not appear that any test of the holder had been made, that each section had been raised to its full height by air pressure, or that it was in complete working order, or was perfectly gas-tight. As the parties contemplated all of these tests before delivery, the defendant cannot be held to have waived them, in the absence of proof that it did something more than to make preparations to make the tests prescribed by the contract.

The defendant excepted to the submission of the question whether it had control, possession, and custody of the structure, and was applying it to the uses for which it was intended, and to the refusal of the court to charge "that there is no sufficient evidence to justify a finding by the jury that the defendant did intend to accept the structure as a completed structure," and that "the proof does not justify a finding that the plaintiffs delivered the tank, holder, and guide frame to the defendant at any time prior to the accident," and these exceptions require a reversal of the judgment.

The respondents earnestly insist that the evidence clearly establishes as the cause of the destruction of the tank and holder an explosion produced by the act of the defendant in filling the tank with foul water; but this contention will not avail, in the face of the distinct charge of the court that there was no evidence of any neglect of the defendant causing an explosive to exist inside the tank, or that in fact the holder had become filled with marsh gas, or that the defendant had introduced any gas into the holder. In the condition of the record before us, it seems clear that the rule applicable to the case is, as stated in Harmony v. Bingham, 12 N. Y. 99, 62 Am. Dec. 142, Tompkins v. Dudley, 25 N. Y. 272, 82 Am. Dec. 349, Wheeler v. Conn. Mut. Life Ins. Co., 82 N. Y. 543, 37 Am. Rep. 594, and Dermott v. Jones, 2 Wall. (U. S.) 1, 17 L. Ed. 762, that:

"When a person by express contract engages absolutely to do an act not impossible or unlawful at the time, neither inevitable accident nor other unforeseen contingency not within his control will excuse him, for the reason that he might have provided against them by his contract."

In the contract before us the plaintiffs not only failed to guard against the contingency, but expressly contracted "to bear and repair all loss or damage to the structure caused by accident," and we must assume, for the purpose of this decision, that the plaintiffs' failure to perform was due to a casualty not produced by the act or fault of either party. The argument that the provisions of the contract relating to tests and delivery and acceptance operated to suspend the time of payment, but not the defendant's liability, and that, these conditions having been rendered impossible, plaintiffs may nevertheless recover, would have more force if the contract was merely to perform certain work and furnish certain materials. The plaintiffs contracted to deliver a completed structure, and can only recover by showing performance, acceptance, or waiver by the defendant, or that complete performance was prevented by some act or fault of the defendant. It is immaterial where the title to the property was during the performance of the contract, and the fact that bills of sale were delivered as the work progressed does not alter the situation or amount to a modification of the contract or an acceptance of the work done, in the absence of proof of any act evincing an intention to accept the work or waive or modify any of the provisions of the contract. As the work progressed, the materials attached to the land became the property of the defendant, and, if the structure had not been destroyed, for a failure to substantially perform the contract the defendant could have retained it without making compensation. Smith v. Brady, 17 N. Y. 173, 72 Am. Dec. 442. This rule of substantial performance cannot be invoked in this case simply because there has been a total failure to perform. Concededly the plaintiffs had not done all of the work called for by the contract, and though the work undone was relatively trivial, had the plaintiffs abandoned the work at 5 o'clock on said 13th day of December, and intentionally refused to complete the contract, without being prevented from completing by any act of the defendant, they could not recover on the contract on the theory of substantial performance; and the destruction of the structure, not produced by the act or fault of the defendant, does not excuse performance, because it was one of the hazards assumed by the plaintiffs, until the contract was performed.

The rule that "where the performance of a contract depends upon the continued existence of a person or thing, which is assumed as the basis of the agreement, the death of the person or the destruction of the thing terminates the obligation," relied upon by the respondents, has no application to a case where the thing destroyed is the thing which one of the parties has expressly contracted to produce and deliver. If upon a new trial the plaintiffs can show that impossibility of performance was caused by the act or fault of the defendant, a different situation will be presented. Vandegrift

v. Cowles Engineering Co., 161 N. Y. 435, 55 N. E. 941, 48 L. R. A. 685; Dolan v. Rodgers, 149 N. Y. 489, 44 N. E. 167.

The judgment and order appealed from should be reversed, and a new trial granted; costs to abide the event. All concur.