[No. 6144.]

## DENVER CITY TRAMWAY COMPANY VS. BRUMLEY.

1. EVIDENCE—*Res Gestae,* may be broadly defined as something incidental to the main fact and explanatory of it, including acts and words so closely connected with it as to constitute part of it, and without a knowledge of which the main fact may not be properly understood—events themselves speaking through the instinctive acts and words of the participants in the transaction, growing out of the main facts, and contemporaneous with it. —(254).

The declaration of the conductor of a street car made in the act of assisting to her feet a lady who had just been thrown from his car, that "the accident was not due to his fault, that the motorman started without a signal"; and his question to another passenger "Did you notice that the car started before I rang?" were held clearly admissible as verbal acts, part of the transaction, and serving to illustrate, explain and interpret it— (258).

2. APPEALS—*Harmless Error*—The refusal of an instruction calling upon the jury to bear in mind, in considering the evidence of the plaintiff, her direct interest in the result of the action, is harmless, where a general instruction is given requiring that, as to all witnesses, the jury should among other things, take into account their interest, if any, in the result of the suit —(259).

Where the charge of the court as a whole is comprehensive, correct and fair, possible technical objections to segregated portions of it will not reverse—(259).

3. VERDICT—*on Conflicting Evidence*—Is conclusive where there is sufficient to support it—(260).

*Appeal from Denver District Court*—HON. SAMUEL L. CARPENTER, Judge.

Mr. GERALD HUGHES and Mr. HOWARD S. ROB-ERTSON for appellant.

Mr. THOMAS B. STUART and Mr. CHARLES A. MURRAY for appellee.

Mr. JUSTICE BAILEY delivered the opinion of the court.

Plaintiff's complaint alleged in substance that, while attempting to alight from one of defendant's cars, at the intersection of Fifteenth Street and Cleveland Place, after the car had been brought to a stop, but before she had an opportunity to completely get off, the car was negligently and carelessly put in motion and moved forward, and by reason thereof she was thrown to the pavement, and the bones of her left arm, wrist and hand fractured and broken in two or more places, her left shoulder sprained, bruised and disabled, her back and hip bruised and wounded and her nervous system greatly shocked. To reimburse her for the damage thus sustained she prayed judgment in the sum of $10,000.00.

The defendant for answer denied these allegations, and set up the defense of contributory negligence, alleging that the plaintiff attempted to alight from the car before the same came to a stop, and before it was in the act of even slowing up, and also that in alighting from the car she stepped off with her face to the rear. The plaintiff had judgment for $1,520.00, and the defendant brings the case here to review that judgment on appeal.

The first error assigned goes to the admission by the court, as is alleged, of improper evidence on behalf of plaintiff, and the rejection of proper evidence offered by defendant.

The main contention under this head is that the court permitted the plaintiff, in order to sustain the allegations of her complaint to testify as follows:

"Q. Well, now, what if anything further was said by the conductor in that immediate connection?

A. When he got me on my feet and he was still holding onto me, I said, 'Oh, conductor, why did you throw me?' and he let go of me then and turned and said to some of these men standing there and he said, 'I have been on the road so many years and this is my third accident,' and he said, 'Two of them have occurred since noon today,' but he says, 'This one wasn't my fault, the motorman started the car without a signal.'

Q. State how soon after you were thrown on the pavement did this conductor make this remark which you have last stated?

A. Well, it was within the time I have been telling you; I think it couldn't have been over two minutes after I was thrown from the car when he said it."

Upon motion, all of the answer having reference to other accidents and to the experience of the conductor was stricken by the court and withdrawn from the jury. That portion of the answer wherein the conductor said: "This one wasn't my fault, the motorman started the car without a signal," was premitted to go to the jury as part of the res gestae. It is earnestly contended that this evidence is incompetent, and that it was reversible error to permit it to go to and be considered by the jury, upon any theory whatever. Also answers given to questions propounded to Dr. J. B. Kinley, one of plaintiff's witnesses, were objected and excepted to, as follows:

"Q. At that time, (referring to the time the conductor was lifting the plaintiff to her feet) Doctor, did you hear the conductor say anything in regard to the accident?

A. Yes, sir.

Q. You may state what he said.

A. He said, 'Did you notice that the car started before I rang?'"

*Res gestae* may be broadly·defined as matter inci-
dental to a main fact and explanatory of it, including
acts and words which are so closely connected therewith
as to constitute a part of it, and without a knowledge of
which the main fact might not be properly understood.
They are the events themselves speaking through the
instinctive words and acts of participants; the circum-
stances, facts and declarations which grow out of the
main fact, are contemporaneous with it and serve to il-
lustrate its character.

The general rule, upon the question of the admis-
sibility of testimony as part of the *res gestae*, of such
declarations or statements as are here objected to, is
well stated in *Louisville, etc., Ry. Co. v. Buck*, 116 Ind.
566, as follows:

"It is not always easy to determine when declara-
tions having relation to an act or transaction should be
received as part of the *res gestae*, and much difficulty
has been experienced in the effort to formulate general
rules applicable to the subject.    This much may, how-
ever, be safely said, that declarations which were the
natural emanations or outgrowths of the act or occur-
rence in litigation, although not precisely concurrent in
point of time, if they were yet voluntarily and spon-
taneously made so nearly contemporaneous as to be in
the presence of the transaction which they illustrate
and explain, and were made under such circumstances
as necessarily to exclude the idea of design or delibera-
tion, must, upon the clearest principles of justice, be
admissible as part of the act or transaction itself."

In *Lund v. Tyngsborough*, 9 *Cush.*, page 42, speak-
ing of statements such as are now under consideration,
the court said:

"Such a declaration derives credit and importance,
as forming a part of the transaction itself, and is in-
cluded in the surrounding circumstances, which may al-
ways be given in evidence to the jury with the prin-
cipal fact.    There must be a main or principal fact or

transaction, and only such declarations are admissible as grow out of the principal transaction, illustrate its character, are contemporary with it, and derive some degree of credit from it."

In *Rockwell v. Taylor*, 41 Conn. 55, the rule was laid down thus:

"To make declarations admissible on this ground, they must not have been mere narratives of past occurrences, but must have been made at the time of the act done, which they are supposed to characterize, and have been well calculated to unfold the nature and quality of the acts they were intended to explain and to so harmonize with them as to constitute a single transaction."

In *Tilson v. Tirwilliger*, 56 N. Y. 273, JUDGE FOLGER laid down the rule as to *res gestae* declarations in this manner:

"To be a part of the *res gestae* they must be made at the time of the act done, which they are supposed to characterize; they must be calculated to unfold the nature and quality of the facts which they are intended to explain; they must so harmonize with those facts as to form one transaction."

In *Missouri Pacific Rwy. Co. v. Baier*, 37 Neb. 244, it is said:

"The consensus of the authorities seem to be, that a declaration to be a part of the *res gestae* need not be coincident in point of time with the main fact proved. It is enough that the two are so clearly connected that the declaration can, in the ordinary course of affairs, be said to be a spontaneous explanation of the real cause. The declaration is then a verbal act, and may well be said to be a part of the main fact or transaction."

*New York & Colo. M. S. & Co. v. Rogers*, reported at page 6 of 11 Colorado Reports, is a case where the declarations of the defendant's foreman, made some thirty or sixty minutes after the accident, as to the un-

safe condition of a certain appliance, were held competent. The court, speaking through Mr. JUSTICE HELM, said:

"The foreman was defendant's agent in charge of the mine, and was upon the ground when the plaintiff was injured. He proceeded at once to the shaft, and directed the employes to fix the appliance in question. His remark was called forth by the accident, and was uttered while giving instructions with reference to that which plaintiff claims was its cause. * * * The declaration in question was not an idle statement, wholly disconnected from the principal fact. It tended to throw light upon the circumstances attending the injury, including the cause thereof, and to illustrate its character. We shall hold that there was no abuse of the 'sound discretion' lodged with the court in admitting it as part of the *res gestae*."

In *D. & R. G. R. R. Co. v. Spencer*, 25 Colo. 9, upon the same line of reasoning, statements of decedent, although self-serving, and made several days before the accident, were held admissible as illustrative of his act in afterward going to the place of the accident, as being, in the language of Wharton, "part of the immediate preparation for, or emanations of, such act; and not produced by the calculated policy of the actors."

The opinion in *Pueblo Building Co. v. Klein*, 5 Colo. App. 348, although strongly relied upon by the defendant as an authority for the exclusion of this evidence, upon full consideration and analysis, seems rather to support the propriety of its admission. In that case it is said:

"The general doctrine applicable to the question may be stated thus: The declaration offered in evidence must be either contemporaneous with the principal fact, or its natural and spontaneous outgrowth. It must be the instinctive, unmediated utterance of the party while the impression produced by the event has

full possession of his mind. The connection between the statement and the fact must be such that the one is the evident interpreter of the other. Their relations to each other must be that of immediate cause and effect. When the two are thus connected, it does not matter that there is an appreciable lapse of time between them. Notwithstanding such lapse, the one is a continuation of the other, and both are parts of one transaction."

No more perfect, complete or accurate description of the situation before us can be given than that found in the language just quoted from that opinion, in which it is further said:

"In this case no connection whatever appears between the fall of the child from the elevator and the words spoken by the elevator boy. If, when the child fell out, he had immediately lowered the elevator to the basement, against the floor of which she struck, any exclamation he might have made upon first coming in sight of her body, and realizing the fatal result of the accident, would perhaps be considered as part of the transaction, and therefore competent."

In the case of *Trumbull, Receiver, v. Donahue*, 18 Colo. App. 460, a suit for damage for injury to a man's hand, crushed in the closing door of a car, the declaration of the brakeman, made directly after the accident, to the conductor, "Look what this door has done to this man's hand." and his further statement to the plaintiff, "Turning that curve throwed your hand off," were both held admissible under the authority of *Building Company v. Klein, supra,* as being the natural and spontaneous outcome of the principal fact and constituting an entire transaction.

If the declarations and statements of the conductor in the case at bar were not the natural and spontaneous outcome of the main or principal fact, forming a material part of it, and competent as original evidence in the nature of *res gestae,* then there can be no such

thing. They were made at the very time, and in the very presence, of the accident, while the conductor was still in the discharge of his duties in that behalf, lending aid to the victim of the unfortunate happening. They grew directly out of and supplemented the main fact; indeed, they were the legitimate offspring of it, part and parcel of the transaction itself. They were clearly verbal acts, serving to illustrate, explain and interpret the transaction. The situation under which they were made exclude the idea of design or deliberation, and stamp them with hte insigna of truth. Under practically all of the authorities, declarations and statements of this sort, made under such circumstances and conditions, are admissible in evidence. The fact that they may have been brought forth by an exclamation on the part of the plaintiff, renders them none the less voluntary, natural and spontaneous, and they are therefore none the less admissible because of that fact.

Under the head of improper evidence admitted and proper evidence excluded there are no other matters urged which are regarded as being sufficiently important to require discussion.

The defendant requested the court to give instruction number 9, as follows:

"The court instructs the jury that in Colorado, by statute, the plaintiff is allowed to testify in her behalf, but in considering her evidence you are to bear in mind the fact that she is the plaintiff and directly interested in the result of the action."

And the court declined to do so. Of this refusal complaint is made by the defendant. It is unnecessary to consider or pass upon the question whether such refusal would have been error had no other equivalent instruction been given, but as this point was clearly covered by what the court said, first, in instruction number 5, wherein it advised the jury that the weight of evidence was, among other things, to be determined by

the motives of the witnesses in testifying, as shown upon the stand, and by their interest, if any, in the result of the suit; and again, in instruction number 13, upon the credibility of witnesses, wherein the jury, among other things, were told to take into consideration the bias of the witnesses, their prejudice or interest, if any had been shown, in determining their credibility and the weight to be given their testimony, this instruction was properly refused.   No one doubts that the jury knew that the plaintiff was the plaintiff, and also exactly what interest she had in the suit, and they were fully instructed to consider such interest, that is, the interest of all witnesses, in determining the weight and credibility to be given their respective testimony.   It could have added nothing whatever to the cause of the defendant to have had this instruction given.   There was no error in refusing it, since what it contained had been substantially incorporated in other instructions given.   *Tanner v. Harper,* 32 Colo. 156; *Thompson v. People,* 26 Colo. 496; and *Denver City Tramway Company v. Cowan,* decided at the April, 1911, term.

Much argument is offered against certain instructions given, and it may be that, seggregated from the charge as a whole, purely technical objections might be successfully urged to some one or more of them.   Almost no case of any considerable importance has ever been tried in which complaint might not, with equal force, have been made of isolated instructions, considered only disconnectedly.   But the charge, as a whole, is comprehensive and full; it correctly states the law of the case and treats the defendant absolutely fairly; there is nothing whatever in the instructions of which it can justly and properly complain.

It is finaly urged and argued at great length that the verdict of the jury is contrary to the weight of the testimony.   This argument is made in face of the fact that there are decisions by this court, almost without

number, which have announced the doctrine, that questions of fact upon conflicting evidence are to be determined by a jury, and not by an appellate court, and that the findings of a jury thereon are conclusive and will not be disturbed on review. Moreover, in this particular case, despite the exhaustive and persuasive argument of counsel to the contrary, we are, after a full and careful inspection of the entire record, persuaded to the view, not only that there is ample testimony to support the verdict of the jury, but that possibly the preponderance thereof is that way. So that there appearing to have been, in all respects, a full, fair and impartial trial, with, under the facts, an unusually modest and moderate money award, the judgment should be affirmed.

*Judgment affirmed.*

Mr. JUSTICE MUSSER and Mr. JUSTICE WHITE concur.