[No. 8442.]

BROTHERHOOD OF LOCOMOTIVE FIREMEN AND ENGINEMEN V. MCHENRY.

EVIDENCE—*Receipt*—*Evidence to Overcome*, must be clear and convincing.
    Action upon a life policy.   Defense non-payment of assessments.   The evidence examined and held insufficient to overthrow the *prima facie* case made by certain receipts produced by plaintiff. (483, 484.)

*Error to Las Animas District Court.* Hon. A. W. McHENDRIE, Judge.

Mr. A. C. McCHESNEY, for plaintiff in error.
Mr. J. C. BELL, for defendant in error.

Mr. JUSTICE HILL delivered the opinion of the court.

This writ is to review a judgment for $1500 in favor of the defendant in error upon an insurance policy issued by the plaintiff in error upon the life of Walter McHenry, a son of the defendant in error, who died January 21, 1913.   The

assignment urged is that the verdict of the jury was manifestly against the weight of the evidence. The contention is over whether McHenry paid his assessment for the month of December, 1912. It stands admitted that if this payment was made his mother is entitled to recover, otherwise not. The evidence is conflicting. To establish this payment the mother produced in evidence receipts for the months of November and December, 1912. It was proven and is admitted, that they are upon the regular blanks of the association, sent to the local office by the general office; that they were signed by the proper officer whose signature is admitted; that the receipts upon their face purport to be receipts for the assessments for these two months. There is no dispute concerning these matters. Counsel, in his reply brief, says, we admit that plaintiff's exhibits A and B unexplained, would be *prima facie* evidence that the deceased, Walter McHenry, had paid his assessments for the months of November and December, 1912. On cross examination, by deposition, Mr. Hawley (the general secretary and treasurer of the association) was requested to take two blank receipts, such as were used in November and December, 1912, and punch them to show the payment made for assessments during these months and attach them to his deposition. The copies thus furnished are in the same amounts and otherwise similar to those which it is conceded were delivered to the deceased by the proper officials of his local lodge.

There was also testimony by others familiar with such receipts, that they were furnished by the Grand Lodge to the financial secretary of the local lodge, who delivered them to the deceased; also, that a member could not obtain them except upon payment of his assessments; that the password of the lodge changes quarterly, and that a member expelled for non-payment of dues could not attend lodge thereafter; that expelled or suspended members, and the public gener-

ally, cannot attend the meetings of the lodge when the ceremony of initiating a member is being conducted; that during the month of November, 1912, the deceased attended a meeting of his local lodge and participated in initiating other members; that he lived with his mother at Trinidad, and received his mail at a boarding house conducted by her; that his mother looked after his mail, and that at no time during several months preceding his death did he receive any letters from the officials of the local lodge, calling for the payment of dues or otherwise, as the secretary testified he had mailed to him there; that at the time deceased brought these receipts home, which was in November, 1912, he told his mother that that made him good until January the 14th.

There is also testimony showing a payment of $10 for him, by the mother, January the 15th, 1912, and $25, by the deceased, November the 11th, 1912, when the receipts were issued. There was also a letter bearing the date October the 2nd, 1911, written by the father of the deceased to Stewart (the financial secretary of the local lodge) enclosing $10 to apply upon the son's assessments. October the 3rd, 1911, Stewart replied as follows, "Find herein receipts to the amount of $9.25. There being a deposit of 75c to apply on next time." The plaintiff claims this meant that he was then paid up to that date with seventy-five cents to apply on next time, as the letter states. If this is correct, then the amount admitted to have been paid thereafter was more than sufficient to pay all the assessments up to the time of his death. There is also testimony, that, soon after the payment of October 3, 1911, Stewart returned to McHenry seventy-five cents, which the plaintiff claims is another fact tending to prove that he was then paid up to date. Upon cross examination, when it was pointed out to Stewart that his books showed this return, he admitted it and in explanation says, "10-14-11. Returned 75c. What does that entry mean? It means I returned him 75c. I notice here on 10-

3-11, he paid some months, and then this one he paid seventy-five cents too much, and next day, I gave him back his seventy-five cents." The plaintiff claims that this explanation does not explain. There is also testimony that soon after the $25 payment of November 11, 1912, to-wit, on November 19th, following (when the deceased attended a meeting of the lodge), Stewart, the financial secretary, returned to him fifty cents, presumably upon account of another overpayment. It is conceded that if Stewart's letter of October the 3rd, 1911, meant that the deceased was then paid up to that date, with seventy-five cents to apply on next time, as the letter states, that the amount admitted to have been paid thereafter was more than sufficient to pay all assessments up to the time of his death, and the plaintiff claims this fact is established, not only by this letter and the receipts thereafter given, but by the return of the other fifty cents to the deceased during the month of November, 1912.

The testimony upon behalf of the defendant includes the deposition of the witness Hawley, general secretary and treasurer, as to what the records in his office show, which is to the effect that the last remittance received at the general office, account assessments of McHenry, was for the month of July, 1912, received July 19th; that in the month of August he received notice from Stewart, the financial secretary of the local lodge, that McHenry had made default in the payment of the assessments against him, and that McHenry was expelled from the association August 2, 1912, for the non-payment of assessment for that month, and that he was never reinstated. This testimony is accompanied by copies of the by-laws relating to subordinate lodges, which give to it this right upon the non-payment of assessments, etc.

Arthur Stewart, the financial secretary of the local lodge, testified, that McHenry had been a member of the local lodge; that he was usually in arrears in paying his assessments; that as a matter of accommodation the lodge

would advance his assessments, and send them to the Grand Lodge; that the local lodge remitted for him for twelve months, August, 1911, to July, 1912; that he had paid no part of these assessments; that the local lodge refused to advance his assessment for the month of August, 1912, and that on August 2, 1912, he was expelled from the Order; that on the 11th of November, 1912, after his expulsion, he paid to the lodge eleven months back assessments, which it had advanced for him; that the receipts offered in evidence by the plaintiff were given for the amounts in arrears for the months of November and December, 1911, which the lodge had advanced for him; that other receipts, for which the witness produced stubs, had been issued showing payments on the same date and were for the months of August to December, 1911, and from January to June, 1912. He produced his monthly statements to confirm his testimony, duplicates of which were forwarded to the general secretary, and also other books, to show that no assessments had been made against McHenry after his expulsion, August 2nd, 1912.

The records of the local lodge were produced which disclose a meeting August 12, 1912. They were kept by a Mr. Tom Turner, and showed that at this meeting Stewart, the financial secretary, had reported the expulsion of McHenry, Stewart testifying that he had notified the lodge of the delinquency. The plaintiff contends, that the original record shown to the jury discloses that the portion referring to McHenry had been written in thereafter; that it was crowded in just over the signature of Turner, and that Turner hunted his records in vain for another place therein where an entry of this sort had been made after the close of the entire business of the lodge, but was unable to find one. This, of course, was a question for the jury to consider. The witness, Turner, admitted that the deceased sat in the lodge about the 19th of November, 1912, but claims that he

called attention of the president to the fact that he had been expelled, and had no right to sit in the lodge; that the president simply said, "Oh, well, he says that he is going to be re-instated again, and he says his brother is being initiated, and I will just leave him in," and that they had some further words over it. The president did not testify. The witness Miller, who was being initiated at the time, testified that Turner was not present and did not come up to the lodge room until after the ceremonies were over, or nearly so. Turner is also contradicted by Leslie McHenry, a brother of the deceased, who was present and being initiated at the time. His testimony is to the effect that Turner was not there. The witness Stewart admits, that at this meeting he returned to the deceased fifty cents; that this was done in his official capacity. Stewart further testified, that the deceased knew he was in arrears, asked him what it would cost to be reinstated, and was told; also that he had repeatedly mailed him letters to Trinidad demanding dues, etc. This was denied by the mother, that is, that any letters were ever received. The receipts for the November and December, 1912 assessments, held by the deceased, were for $2.25 each, and stated they were in full for these months. Stewart testified that the dues for the months of November and December, 1912, were $2.50 per month, but for the same months during 1911, were only $2.25 per month. This testimony is in apparent conflict with that of Mr. Hawley, the general secretary, who, in marking the receipts as to how they would read were they given for November and December, 1912, marked them for the sum of $2.25 each, and not $2.50, as testified to by the witness Stewart. Plaintiff claims that Stewart's books also show that the assessment for some other members for December, 1912, were $2.25, and not $2.50, as testified to by Stewart. We think this latter immaterial; for, if we understand Mr. Hawley's testimony, a member's assessments to the Grand Lodge depends upon

the amount and classification of the insurance carried, and in this respect his testimony does not agree with the contention of his counsel who claims that the $2.25 marked by him was intended for the Grand Lodge assessment only, for the reason that he states the Grand Lodge assessment for a member carrying a policy of the class and amount Mr. McHenry's was, would be $2.00 for the month of December, 1912, and having marked his copy $2.25 he must have intended to include therein something more than the Grand Lodge assessment.

There is also testimony of other witnesses, former officials and members of the lodge, that, in case the transaction was as testified to by Stewart that the receipt for the money paid to the local lodge by McHenry for advancements to him for Grand Lodge assessments, would not have been the kind used at all, but would have been of another character; that the blanks for assessments are sent out for only one purpose and are never to be used for any other, viz., to be given for the payment of assessments only and not otherwise.

Many reasons are presented by each side setting forth why and how the testimony sustains their respective contentions. We can, in a way, agree with both, which is one of the vital reasons why we should not disturb the verdict of the jury, even though we might have found otherwise in the first instance. This is specially true when applied to the receipts admitted to be genuine, which, in connection with other evidence, made for the plaintiff more than a *prima facie* case. As stated by the supreme court of Illinois in *Ennis v. Pulman Palace Car Co.*, 165 Ill., at page 182, 46 N. E. 445,

"It is true, that a written receipt may be explained by parol; but it is *prima facie* evidence of the facts recited in it; and, the evidence furnished by it being of the highest and most satisfactory character, its force can only be impaired

by testimony which is convincing. The proof, offered to explain it, must be clear and unmistakable. It must be overcome, if overcome at all, by a clear preponderance of the evidence."

This line of reasoning is applicable here and whether or not it was satisfactorily overcome was a question for the jury to determine. It was submitted to that body under instructions to which no complaint has been made. Under such circumstances, the evidence being conflicting, it is not the province of this court to disturb the findings. *Denver T. & I. Co. v. C. & S. Ry. Co.*, 58 Colo. 313, 145 Pac. 707, *D. & R. G. R. Co. v. Peterson Grocery Co.*, 59 Colo. 125, 147 Pac. 663; *Bank of Broomfield v. McKinley*, 53 Colo. 279, 125 Pac. 493; *Denver City Tramway Co. v. Brumley*, 51 Colo. 251, 116 Pac. 1051.

The judgment is affirmed.

*Affirmed.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE TELLER concur.