Frederick v. City of Bonner Springs.

---

No. 21,929.

W. H. FREDERICK, *Appellee,* v. THE CITY OF BONNER SPRINGS, *Appellant.*

SYLLABUS BY THE COURT.

1. STREET PAVING—*Refusal of City to Pay Contractor—Bad Faith of City Officials* The evidence held sufficient to support a finding that the engineer and other officers of a city did not act in good faith in rejecting all of the paving done under a contract.

2. SAME—*Refusal of City to Point Out Defects—Contractor's Right of Recovery.* Where a contract is entered into for the paving of a street at an agreed price per square yard, the contractor to replace any portions that are found to be defective, and the municipal authorities charged with passing on the sufficiency of the work unreasonably refuse to point out the portions that require replacement, the contractor, being thereby prevented from performing the contract in full, is entitled to recover an amount proportionate to the quantity of pavement that was properly laid and should have been approved.

3. SAME—*Assignments of Error.* Various assignments of error held not to be well founded.

17—104 KAN.

Frederick v. City of Bonner Springs.

4. Same—*Presentation of Claim to City—Costs.* The facts regarding the presentation of a claim to the city held not to have been such as to preclude the plaintiff from recovering costs.

Appeal from Wyandotte district court, division No. 1; Ed-ward L. Fischer, judge. Opinion filed February 8, 1919. Affirmed.

*Eldred L. Eaton,* of Bonner Springs, for the appellant.

*Edward M. Boddington,* and *J. M. Fisher,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

Mason, J.: W. H. Frederick entered into a paving contract with the city of Bonner Springs, by the terms of which he was to receive 37 cents per cubic yard of excavation and $1.02 per square yard of paving. Claiming to have performed his contract, he brought an action for the contract price, $1,104.72, of which $87.50 was for grading. The city contested the claim on the ground that the work had not been approved by the city engineer, as required by the contract, and was so defectively performed as to be of no value. The plaintiff recovered judgment for $769.96, and the defendant appeals.

1. The fact that the engineer refused to approve the work is not fatal to the plaintiff's recovery, if such refusal was arbitrary or unreasonable. (6 R. C. L. 960.) Under the instructions, the verdict necessarily implied a finding that this was the case, but the defendant insists that there was no evidence to justify it. The witnesses differed in their judgment as to the quality of the pavement. Although some of them testified that it was very defective, others said in effect that the contract was substantially complied with. The plaintiff gave a version of the dealings between himself and the city officials which may be thus summarized:

The contract was made on November 23, 1916. It required work to be begun within ten days, to be prosecuted uninterruptedly, to be completed within 90 days, and to be done at the time and in the manner directed by the engineer. The grading was completed and the paving begun in December. About the middle of the forenoon of January 9 the engineer

ordered work to stop until further notice "owing to the uncertain weather conditions and the unsatisfactory condition of the subgrade." The plaintiff continued work for about three hours, using the cement on hand, and then quit. The weather was then cloudy, but not freezing. On January 27, he asked the engineer by telephone for leave to begin work again the next day. The engineer said it was all right with him if it was with the mayor. He then-called the mayor and asked him to talk with the engineer. Later the mayor told him he had done so and that it was all right with him. The mayor and engineer asked the plaintiff to sign a waiver with reference to the work he had done after being notified to quit —an agreement that if he was allowed to proceed this should not be construed by him as an acceptance of that work. He agreed to this; he wanted to sign the waiver, and omitted to do so only because no opportunity was given him. He told the mayor he was going ahead, and asked if he could get an inspector. The mayor answered that he would do the best he could for him. The plaintiff resumed work and completed it on January 30, no inspector being furnished. On March 17 the plaintiff asked the engineer to come and look at the street. He did so and said that the work done without an inspector looked far better than the other, and that he would recommend an allowance of 70 per cent on the whole. They then went to the mayor and the engineer said to him: "Mr. Frederick and I have come to the conclusion, or I have come to the conclusion, that I will recommend to the council that we pay him 70 per cent of that street and hold back 30 per cent, and if the job don't hold up we will take the 30 per cent to complete the work, and I will recommend that you call the council together and pay him 70 per cent." The mayor answered: "Anything that the city engineer says is all right with me. I am satisfied, I want to be honest about it." On May 2, the mayor and council, acting in pursuance of later advice of the engineer, refused to pay anything whatever, and ordered the plaintiff to tear up and remove all the paving and repave the street. He asked to be told what portion of the paving was bad and offered to replace it, but no modification of the demand for the removal of all of it was made.

The engineer in a written report to the mayor and council made statements to this effect: The plaintiff did not quit

work when ordered to do so, but continued until stopped by freezing weather. When he asked leave to begin again the engineer told him he would consent provided the weather stayed warm, and provided further, that he would sign the "waiver" already referred to. The plaintiff agreed to do this, but began work without having done so, and without an inspector. After the completion of the pavement the engineer "figured to give an estimate of 60 per cent," and when this was stated to the mayor, and the plaintiff insisted that he understood the estimate was to be 60 per cent of the work not inspected, he (the engineer) finally suggested that it might stand that much, which would amount to 70 per cent on the entire contract. After this conversation, the engineer decided to stick to his original recommendation that "a six-months test be required on all of this work not city inspected." Holding the city not to be liable for any paving except that part put in under city inspection, the engineer submitted an estimate dated March 21, reporting that the plaintiff had completed 230 cubic yards of grading at 37 cents, and 225 square yards of paving at $1.02, making a total of $314.60.

The jury made a special finding to the effect that the plaintiff was ready, willing and able to perform his part of the contract, but that the city and the engineer acted unreasonably in demanding that he put in the whole street over again.

We regard this evidence as warranting the finding by the jury of the existence of the following circumstances, which are open to interpretation as tending to show bad faith on the part of the city authorities: The plaintiff was given permission to resume work only on condition that he should sign the agreement called a waiver—the necessity for which is not apparent. He was willing to sign it but was given no fair opportunity to do so. His not signing it was made an excuse for refusing to furnish him an inspector as the work progressed. The engineer upon his inspection (made more than six weeks after the work had been done) believed and told the mayor that the plaintiff was entitled to 70 per cent of the contract price, and that the 30 per cent retained would be sufficient security for the correction of any defects that developed later. Within a few days he made a formal report recommending the payment of $314.60. Later the mayor and council refused to make any

Frederick v. City of Bonner Springs.

payment and ordered all the pavement removed. The plaintiff offered to replace any portion that should be pointed out to him as defective, but no particular part was so designated.

We do not suggest that the evidence compels these findings or that a conclusion of bad faith necessarily follows from them; but when conflicts in the testimony are resolved in favor of the plaintiff, and the permissible inferences most favorable to him are drawn from them, we are unable to say that a decision against the good faith of the engineer and the officials must be set aside as without support.

2. The defendant asserts that the amount of the verdict (a little less than 70 per cent of the contract price) shows that the recovery was based upon *quantum meruit,* instead of upon the express contract, and contends that a municipality cannot be held liable on that basis. The rule that one who obtains an advantage from a part performance by a contractor who refuses to perform in full is sometimes liable to the extent of the value of the benefit conferred, may not apply to the same extent to municipalities as to individuals. (See, however, *Ritchie v. City of Wichita,* 99 Kan. 663, 163 Pac. 176.) But that rule is not here invoked. The charge of the trial court permitted a recovery for less than the full contract price, not upon the theory of a liability arising from the acceptance and use of the pavement by the city, but upon the theory that a full performance had been prevented by the defendant. The general rule applicable to that situation is that a contractor who performs a part of his agreement and is unable to complete it by reason of the conduct of the other party may have a proportionate recovery for what he has done. (13 C. J. 693; 6 R. C. L. 976.) No reason is apparent why a municipality should not be amenable to that rule. (See *The City of Dunkirk v. Wallace,* 19 Ind. App. 298; *Ayers v. New Castle,* 10 Pa. S. C. R. 559; *Sheehan v. Pittsburg,* 213 Pa. St. 133; *Gearty v. Mayor, etc., of New York,* 171 N. Y. 61.) Here the contract required the plaintiff to rebuild any work which the engineer should decide to be defective. The jury presumably concluded that about 70 per cent of the paving was properly laid, and the engineer so regarded it; and that the plaintiff was willing to complete the contract by relaying the defective portions, if given an opportunity to do so, but was prevented by the refusal of

the city authorities to point them out. Such a conclusion was not without support in the evidence, and an allowance to the plaintiff based upon it violates no principle of law.

3. Complaint is made of the admission of the written report of the engineer already referred to. The objections to it are that it was not proper rebuttal, was irrelevant, and tended to mislead the jury. Whether it was rebuttal is not now important. We regard it as admissible for such light as it might throw upon the attitude of the engineer. An employee of the plaintiff was allowed to testify that the inspector was satisfied with all the work put in while he was there. This is also objected to. We do not regard it as seriously prejudicial. Error is alleged in allowing the plaintiff's attorneys to ask questions suggesting that the attitude of the city toward the plaintiff was due to political controversy. The questions for the most part were ruled out, and it does not seem probable that the verdict was affected by them. Upon this matter the decision of the trial court has practically controlling weight. The defendant offered to show that the surety on a bond given by the plaintiff to keep the pavement in repair for five years had notified the city not to pay his claim, and complaint is made of the rejection of the offer. We do not regard the evidence as bearing upon any of the vital issues. It is contended that judgment for the defendant was required by a special finding that parts of the pavement were soft, disintegrating, and crumbling. We discover no inconsistency between this finding and the general verdict, which seems to indicate that a part of the pavement was defective. The contention is also made that several of the special findings showed passion and prejudice. The jury found in answer to questions that none of the paving was constructed in freezing weather and that the paving did not freeze before it had set. There was evidence to support this. They also found that the city did not reject the paving and did not serve a notice upon the plaintiff that it had rejected the paving, stating the defects complained of; also that the engineer accepted the paving unconditionally and made such recommendations to the mayor and council. In view of the entire record, these answers may be interpreted as meaning that the city did not in good faith decide that all of the paving was defective; that it did not in its notice to the plaintiff indi-

cate the portions which it regarded as unfit; and that the engineer had stated to the mayor that he would recommend a payment of 70 per cent. Whether or not the answers were as clear as might have been desired, we do not regard them as showing passion or prejudice.

4. A final contention is that the plaintiff should not have been allowed to recover his costs, because he did not show compliance with the statute requiring unliquidated claims against the city to be presented in writing as a condition to the recovery of costs in an action brought thereon. (Gen. Stat. 1915, § 1750.) The plaintiff asserts that the statute is inapplicable because his claim was liquidated. It is true recovery was had for only a part of the original claim, so that the judgment was for an unliquidated amount. But the plaintiff made his claim in apparent good faith for the payment of the entire sum named in the contract. The city necessarily knew of the contract, of the laying of the pavement, of the amount due, if the work had been properly performed. If recovery had been had for the full amount, the plaintiff would have been entitled to his costs without having formally presented his claim in writing. A written demand (for the entire amount, whic' necessarily included the part allowed) was introduced in evidence by the plaintiff, over the objection, among others, that it had not been presented according to the statute. The only evidence on that subject was the testimony of the plaintiff that he had served it on "some official" of the city. This was obviously insufficient, although from the fact that nothing further was brought out or suggested regarding the matter, the probability seems to be that the notice reached the city clerk, mayor or council. At all events, the city knew of the existence of the claim and could have suffered no prejudice from any informality in its presentation.

The judgment is affirmed.