## No. 14,946.

### CITY AND COUNTY OF DENVER *v.* MIDWEST PLUMBING AND HEATING COMPANY.

(125 P. [2d] 960)

Decided May 4, 1942.

Mr. MALCOLM LINDSEY, Mr. ROBERT J. KIRSCHWING, Mr. WAYNE D. WILLIAMS, for plaintiff in error.

Messrs. BERMAN & HOLLAND, Mr. JOSEPH N. LILLY, Mr. ALEX B. HOLLAND, for defendant in error.

*En Banc.*

MR. JUSTICE BAKKE delivered the opinion of the court.

DEFENDANT in error, plaintiff below, hereinafter designated as the plumbing company, had judgment in a trial to a jury against plaintiff in error, the City and County of Denver—reference to which will be made as the city —for balance due on a contract for a boiler, which the plumbing company had installed at the Denver General Hospital for the city. The city seeks reversal on a writ of error.

The contract was entered into about March 6, 1939, and work was commenced thereunder shortly thereafter. Normal progress was made and the job substantially completed on October 31st, after certain extensions of time had been agreed upon. The boiler was to be used in furnishing heat to a new wing of the Denver General Hospital.

Preliminary to, and on October 31st, the operators of the heating plant at the hospital, under Chief Engineer Brown, were having trouble with the old boilers because leaky headers were allowing the escape of steam, hence Brown was anxious to have the use of the new boiler as soon as possible. Several of the employees of the plumbing company were present at the new plant on October 31st where they had been making some tests on it. That it was in successful operation on that day is not seriously disputed. About 3:30 that afternoon the plumbing

company's employees wanted to turn off the gas under the new boiler and shut down, but Brown said it was needed to furnish heat for the hospital because of the condition of the headers on the old boilers, and Adams, an employee of the plumbing company, testified that Brown said: "There is no reason why we can't just take the new boiler and go right through." Finally, the plumbing company's representative consented, but inquired of Brown: "Who is going to be responsible for the operation of this boiler?" Later, the representative stated: "You will be responsible for the operation of this boiler, and it is your baby." Brown denies this, but several other witnesses testified they were present and heard the conversation. Following this conversation, the men working under Brown took charge of the boiler, and about 2:25 o'clock p.m. the next day the explosion occurred. It was described by witness Milhoan as follows:

"A. Well, before the explosion occurred I was around there, I was around the boiler, and I was trying—looking around watching the different ways to control the boiler, and as I went to take a hold of the boiler, why, just at that time when Mr. Venrick was at the lever of the boiler at that time—and as far as I know of, as far as I can rightly remember, he grabbed me and told me— he said, 'Put that torch in the fire, in the box, as quick as you can,' and I stuck it in the gasoline and went there and stuck it in as his orders was. At the time the steam, as I can remember, the steam was exactly—I can't exactly remember how low the steam was—anyway I can remember that when the steam goes down it goes down very rapidly, and the condition of the load that we were carrying—and he said, 'Hurry, hurry and get that torch in there.' I hesitated a bit, I didn't want to put the torch in the boiler. He said, 'Go ahead, put it in the boiler.' As far as I can remember, I grabbed the torch and stuck it in kerosene and throwed it in the boiler, and in the minute I put it in that hole, why, she

went. That is as far as I remember. At the time I was stunned so bad. I done as they told me."

That the explosion was caused by the negligence of these city employees is shown by undisputed testimony disclosing their failure "to shut the gas off and to let the gas out of the boiler before * * * [lighting] it again," contrary to specific instructions given by the plumbing company.

The contract provided that the plumbing company was to be paid in installments as the work progressed and at the time of the explosion the unpaid balance was $2,838.97 which was the amount sued for in the first and second causes of action. (The amount prayed for in the third cause of action was for cleaning up the debris and dismantling the brick work, which is not in issue here, it being the subject of a separate contract.)

The contract also contained the following clause: "After the equipment is erected and proper connections are made for the operation of the steam generating unit, the equipment shall be tested to determine if it complies with all the conditions of the specifications and guarantees as herein provided."

It is agreed that this acceptance test had not been made before, nor was it being made on October 31st, or November 1st, and the city therefore contends that Chief Engineer Brown had no "authority whatsoever to obtain a loan of this plant for or on behalf of the City and County of Denver prior to its final acceptance." The city contends: 1. "An employee [Chief Engineer Brown] cannot bind his employer in respect to the loan of equipment in the absence of express authorization or ratification." 2. "Declarations of an employee as to matters not within the scope of his employment are not binding upon his employer and are not admissible in evidence against such employer."

■■ We shall consider the second proposition first because we believe it to be the key to this controversy. It has reference to Brown's statements on the afternoon

of October 31st relating to this refusal to let the employees of the plumbing company shut down the boiler and Brown's telling them that his engineers were competent to handle it. This testimony was objected to but the court overruled the objection and we think properly so. If for no other reason—estoppel, see 44 C.J. 385—it was admissible as part of the res gestae. His statements were so closely connected with the explosion—witness Milhoan's testimony, "I done as they told me"—that they are explanatory of it. *Denver & R. G. R.R. Co. v. Spencer,* 25 Colo. 9, 52 Pac. 211; *Denver Tramway Co. v. Brumley,* 51 Colo. 251, 116 Pac. 1051; *Frederick v. City of Bonner Springs,* 104 Kan. 257, 178 Pac. 435.

Mr. Schwab, Manager of Health and Charities for the city, stated that Brown had charge of the operation of the heating plant, and it was he who assumed responsibility for the boiler on the afternoon of October 31 when he placed his subordinates in actual control and operation of the boiler. That the explosion itself occurred because of the negligence of Brown's subordinates it seems to us is the only conclusion that can be reached because there is no evidence of faulty construction or operation before Brown took control of it. It is a clear case of negligence on the part of the city's employees.

Getting back to the city's first contention that an employee cannot bind his employer in the absence of express authorization or ratification. We think this contention is inapplicable here and that the true principle to apply is, "Entire performance of a municipal improvement contract is a condition precedent to recovery under the contract, unless * * * complete performance becomes physically impossible or is prevented or excused by the act of the municipality, in which cases recovery may be had for the part performed." 44 C.J. 382, §2579, or as stated by this court: "He who prevents a thing from being done may not avail himself of the nonperformance which he has, himself, occasioned; or, if the performance of an obligation is prevented by one of the parties to a

contract, the party thus prevented from discharging his part of the obligation is to be treated as though he had performed it. *Empson Packing Co. v. Clawson*, 43 Colo. 188, 198, 95 Pac. 546; *Burrell v. Masters*, 65 Colo. 310, 314, 176 Pac. 316; *United Cigar Stores Co. v. Ivins*, 77 Colo. 600, 603, 239 Pac. 16; *Louthan v. Carson*, 63 Colo. 473, 168 Pac. 656.

That the rule contended for by the city is inapplicable is well illustrated by one of the cases its counsel rely upon, namely, *Logan v. Consolidated Gas Co.* 95 N.Y.S. 163, 168—a case involving an "acceptance test" clause— where the court held: "If upon a new trial the plaintiffs can show that impossibility of performance was caused by the act or fault of defendant, a different situation will be presented."

██ But assuming the city's theory was correct. It was covered by a specific instruction to which no objection was made, so no assignment of error can be maintained on that point.

██ As to the court's refusal to give the instructions tendered by the city and refused, city's counsel answer that themselves when they say: "Defendant requested the court * * * to give its tendered instructions * * * to the jury, which, in effect, would have been tantamount to a directed verdict for the defendant City." A directed verdict was not requested, and had it been, the court would not have been justified in granting it.

We see no reason for disturbing the verdict of the jury in this case.

Judgment affirmed.

Mr. Justice Knous, Mr. Justice Bock and Mr. Justice Burke concur in the result.

Mr. Justice Hilliard not participating.