In the Matter of the Application of SEYMOUR MARKS, Petitioner. BOWERY SAVINGS BANK et al., Respondents.

Supreme Court, Special Term, Nassau County, February 14, 1944.

*Edward Marks* for petitioner.

*Henry P. Hallock* for Bowery Savings Bank, respondent,

*Harold M. Kennedy, United States Attorney*, for Abner H. Ferguson, Federal Housing Commissioner, respondent.

HOOLEY, J. This application is made by a newly inducted member of the armed forces of the United States, for an order staying the enforcement of an obligation secured by a certain mortgage on real property for the period of his military service and extending the period of payment thereof upon the ground that the petitioner's ability to pay the same has been materially affected by his induction into military service.

The application is made under paragraph (a) of subdivision (1) of section 700 of the Soldiers' and Sailors' Civil Relief Act of 1940, added October 6, 1942, also designated as paragraph (a) of subdivision (1) of section 590 of the Appendix to title 50 of the United States Code.

The Federal Housing Administration has been joined by order of this court as a party to this proceeding upon motion of the Bowery Savings Bank, the mortgagee respondent, it appearing that the mortgage in question is insured by the Federal Housing Administration under the provisions of the National Housing Act (U. S. Code, tit. 12, § 1707 *et seq.*).

An answer was interposed by the Bowery Savings Bank and a hearing was held at which testimony was taken.

The petitioner, Seymour Marks, and his wife are the owners, as tenants by the entirety, of certain premises situate at Hempstead, Nassau County, New York. In November, 1939, they executed and delivered to the South Shore Trust Company a bond and mortgage in the principal sum of $5,200 which had been reduced by payments at the time of this application to the principal sum of $4,701.65 with interest thereon at 4½% from December 1, 1943. Since that time the January, 1944, payment on the mortgage has been made, which has further reduced the principal balance to $4,690.12. The Bowery Savings Bank is now the owner and holder of this mortgage by virtue of an assignment thereof from the South Shore Trust Company. The obligation is payable in equal monthly installments in an amount sufficient to completely liquidate the indebtedness as to principal and interest over the period of the mortgage which, in this case, is twenty-five years. Besides making monthly payments of principal and interest, the mortgagors are required to make payments for taxes, fire-insurance premiums and mortgage-insurance premiums. These sums are added together and are payable in a lump sum on the first day of each and every month. The monthly payment required to be made is $47.01, made up as follows: $28.18 is for principal and interest; $16.21 is for taxes; $0.69 is for fire insurance; and $1.93 is for mortgage-insurance premium. It appears further that out of the $28.18 covering principal and interest in the payment made on January 1, 1944, $11.53 was applicable to principal and $16.65 was applicable to interest. As the payments continue, the amount applicable to interest decreases and the amount applicable to principal increases. The total amount to be paid and the amount applicable to taxes are subject to slight variation each year.

The petitioner and his wife are the parents of a child about fourteen months old. The petitioner's income for the year 1943 amounted to approximately $3,300. By reason of his entry into the armed service of his country, it has become necessary for his wife to obtain employment and she has secured a posi-

tion in which she will earn $2,250 per year. She will also be entitled to the soldier's allotment of $960, making a total income of $3,210. However, by reason of the tender years of the infant, it will be necessary that a maid be employed to care for the house and child during the time that the wife is engaged in employment. The evidence before the court shows that the cost of such help will be approximately $1,000 annually, that repairs to the house, which normally would be made by the petitioner, will amount to approximately $100 annually, and that repairs to the car, which normally would be made by petitioner and which car is necessary in connection with the wife's employment, will approximate $50 annually, thus increasing expenses to the approximate total sum of $1,150 annually. This amount subtracted from the total amount of income of $3,210 will leave a net income of approximately $2,060. The petitioner maintains that the ability of himself and his wife to comply with the terms of the mortgage and to make the monthly payments thereunder has been materially affected and he asks that the enforcement of the mortgage obligation be stayed during the period of petitioner's military service and, from the date of the termination of such period, for a period equal to the remaining life of the mortgage plus a period of time equal to the period of his military service, subject to the payment of the balance of principal and accumulated interest due and unpaid at the date of said termination in equal installments during such combined period at the rate of interest on the unpaid balance prescribed in the mortgage for installments paid when due.

There have been numerous cases involving applications for relief under other provisions of the Soldiers' and Sailors' Civil Relief Act. (U. S. Code, tit. 50, Appendix, § 501 *et seq.*) The general construction of these other provisions by the courts is to the effect that the Act was not designed to furnish complete immunity from payment but that it was intended to be liberally construed to protect those who have been obliged to take up arms in defense of the nation. In every case the court has recognized that the criterion to be applied is whether the applicant is able to comply with the terms of his obligation or whether such ability has been materially affected by reason of his military service. The interests of all parties are intended to be equitably conserved in these proceedings. (*Jamaica Savings Bank* v. *Bryan,* 175 Misc. 978; *Nassau Savings and Loan Association* v. *Ormond,* 179 Misc. 447.)

This proceeding differs from the others in that it is an application for relief made by a soldier on the threshold of his

military service at a time when no action or proceeding with reference to the mortgage is pending and when there has been no default in the payment of taxes, interest, and other charges. Research by counsel has failed to disclose any reported decision involving an application similar to this.

All other sections of the statute enacted prior to section 700 were intended to afford relief where an action or proceeding had already been commenced. In addition, the relief granted by those sections extended only for a short time beyond the period of military service.

Section 700 enlarged the relief in both of the last mentioned respects. The relief provided for thereby is directed at the obligation rather than at an action or proceeding and, in addition, that section extends the time of payment, in part, for a specified period of time after the present maturity of the obligation equal to the time spent in the military service. This procedure allows the serviceman to arrange his affairs in a businesslike way in advance and prevents any accumulations of arrears from becoming due at one time. This is a normal and constructive evolution from the other provisions of the Soldiers' and Sailors' Civil Relief Act. The language of section 700 of the statute clearly means that any person may apply to the court for this form of relief if his ability to comply with the terms of his obligation has been materially affected by reason of his military service. No action need be pending. There need be no default in the mortgage. The applicant, however, must be able to establish a change in circumstances by reason of his induction which will interfere or has interfered, with his ability to comply with the terms of the obligation.

There is no doubt that the provisions of the Soldiers' and Sailors' Civil Relief Act are binding upon State courts and all of the people in each State. (*Erickson* v. *Macy*, 231 N. Y. 86; *Selective Draft Law Cases*, 245 U. S. 366; *Konkel* v. *The State*, 168 Wis. 335.) Under section 8 of article I of the Constitution of the United States, Congress has the power to declare war, raise and support armies and a navy, to make rules for the government and regulation of the land and naval forces, and to make laws necessary and proper for the carrying out of those powers. The provisions hereinbefore referred to grant to Congress the right to prescribe the conditions under which persons may be called into the military service of their country. Such authority is implied from the power to raise an army and navy. In enacting the Soldiers' and Sailors' Civil Relief Act, it was the intention of Congress to procure better

soldiers and sailors by relieving them from worry about their financial obligations and welfare of their families and to protect the interests of such soldiers and sailors during their absence.

The Bowery Savings Bank recognizes the theory and purpose of the law and has exhibited a spirit of fairness in this proceeding. It does, however, contend that the applicant's ability to comply with the terms of his obligation has not been materially affected by reason of his military service and that the application should be denied or that, if it be granted at all, it be granted only to the extent of the suspension of principal payments.

The court cannot agree entirely with the position of the bank. It must be remembered that the petitioner's income annually was $3,300 and that, when he passed into the service, the net income to his wife, after providing for household help and the other expenses noted above, was reduced to $2,060. This is a material reduction in the amount of income which will not be compensated for by the absence of the husband, inasmuch as the maid will become an additional member of the household. However, the net income remaining to the wife, after payment for household help and for repairs to the house and car, will still be so substantial as not to justify all of the relief for which petitioner applies.

It is not the intent of the statute to insure that if a man is called into military service his family should continue to live in the same social scale as formerly during the period of military service. War entails sacrifice to a considerable degree not only from those at the battlefront but also from those at home. The sacrifice on the home front, however, is expected not only from those who have members of the family in the various services. Not only the home owner but the mortgagee, also, must expect to be affected by the war. It is the intent of the statute that persons in the military service, who have been summarily removed from their ordinary way of life in order to serve their country, should be freed " from harassment and injury in connection with their civil affairs during their terms of service and thus enable them the more successfully to devote their entire energies to the military needs of the Nation." (Report of House of Representatives Committee on Military Affairs, House Report No. 3001, 76th Congress, 3d Session.)

The Federal Housing Commissioner does not concern himself with the merits of this application but confines himself to a showing to the court that the relationship between the Bowery Savings Bank and the Federal Housing Administration under

the insurance contract covering the mortgage herein would not be affected by any determination made here pursuant to the provisions of the applicable statutes. He maintains that the Administrative Regulations of the Federal Housing Administration with respect to the time within which foreclosure must be commenced excludes the period of military service. Apart from any regulation it is unthinkable that a mortgagee who was restrained by court order from instituting a foreclosure action to enforce the obligation would suffer any loss under the insurance contract covering such mortgage under the National Housing Act for a failure to institute such foreclosure action during the time it was so restrained. If anything further were needed, it appears that the National Housing Act was amended on October 14, 1943, to protect the mortgagee from any loss for failure to institute foreclosure proceedings during all or a part of the period of military service of the mortgagor in order to establish the date of the debentures and the date from which interest is payable thereon. [U. S. Code, tit. 12, § 1710, subd. (a), and § 1739, subd. (a), as amd.]

In view of the foregoing if any relief is to be afforded, it should not, as suggested on the argument, be a suspension of the enforcement of a portion of the obligation merely from a time after the service of a summons, thus placing a further burden for foreclosure costs upon petitioner. The court is of the opinion that the rights of the holder of the mortgage cannot be affected under the insurance contract for any failure to institute an action during the period of such suspension. Any other conclusion would violate the whole spirit of section 700 of the Soldiers' and Sailors' Civil Relief Act.

At first blush an income of $2,060 would seem adequate for the payment of all the charges other than the principal payments involved in the monthly installments. However, when it is considered that the cost of living has risen appreciably, that income tax must be paid by the wife, that food, fuel, gas, electricity and telephone must be provided for the household, that clothing must be purchased for the wife and child, that running expenses of the automobile together with medical and dental expenses must be met, in addition to those innumerable and ever-recurring incidental expenses in connection with a household, it is evident that the applicant should in addition be relieved of some portion of the interest payments. In this case the wife, with commendable diligence, has seen fit to take a position to enable her to carry on the family responsibilities instead of remaining at home, as she might well have done, situate as she

was with the care of a small child. Had she remained at home drastic reductions would have had to be made on the monthly payments. She should not be penalized for her diligence and efforts by being required to bear a burden too heavy for her to carry.

The petition will be granted to the extent of suspending the monthly principal payments amounting to $11.53 on the mortgage in their entirety, plus $5 of the monthly interest charge, thus reducing the monthly obligation by $16.53, and the enforcement of the mortgage obligation will be stayed in this respect during the period of petitioner's military service and, from the date of the termination of such military service, for a period equal to the remaining life of the mortgage plus a period of time equal to the period of his military service, subject to the payment of the balance of principal and accumulated interest due and unpaid at the date of such termination in equal installments during such combined period at the rate of interest on the unpaid balance prescribed in said mortgage for installments paid when due.

The relief herein afforded is in no sense a recasting of the mortgage. Section 700 does not so provide. All that is being done is to stay, in part, the enforcement of the obligation.

Each party has the privilege to apply to the court for a modification of the order to be entered hereon upon a proper showing of a change in circumstances.

Settle order on notice.