No. 18,486.

ARLO PETERSON *v.* RAY SHAFFER.
(352 P. [2d] 281)

Decided May 23, 1960.

Mr. GEORGE J. FRANCIS, for plaintiff in error.

Mr. JOHN C. YOUNG, Mr. JOHN C. YOUNG, JR., Mr. JAMES C. CATES, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE DAY.

THE parties are in the same order here as in the trial court, and we will refer to them by name.

Arlo Peterson, by his complaint filed in the district court, sought the proceeds of three-fourths of a certain crop which defendant Ray Shaffer had harvested and to which Peterson claimed ownership by reason of holding a lease on the land. Peterson also sought return of certain farm machinery taken by Shaffer under foreclosure of a chattel mortgage. This claim was based upon Peterson's asserted right under the Soldier's and Sailor's Relief Act, 50 U.S.C.A. sec. 501, et seq. Shaffer at the time of the foreclosure had not obtained a court order and did not follow the prescribed procedure against one in the Armed Forces, as was Peterson at the time the machinery was seized.

Shaffer was the owner of 1760 acres of farm land in

eastern Colorado. Peterson leased this land for one year, beginning April 1, 1955. Virgil Peterson, brother of the plaintiff, had leased lands which adjoined Shaffer's.

At the time of the lease to Arlo, Shaffer loaned him $2500.00 for the purchase of farm machinery from the previous tenant and took a note and chattel mortgage on the machinery. On April 21, 1955, Arlo obtained an additional $1000.00 loan from Shaffer for additional machinery. Arlo then was inducted into the Army and left Virgil in charge of his farming operations. On June 3, Virgil needing cash to work both leases, borrowed $2000.00 from Shaffer in exchange for a lien on his and Arlo's share of their leases. This money was to be spent on both leases to plant the crops. In late July Shaffer visited Virgil and found that the land had not been sufficiently prepared to put in crops, that Virgil was again without funds, and that the hired hands were ready to quit for non-payment of their wages. Shaffer took over the farming operations, advanced money to Virgil for expenses, and paid the costs of putting in crops in both leases. As harvest time approached Shaffer arranged for cutters to harvest the crop, but S. B. Peterson, father of Arlo and Virgil, objected and claimed that the crop was Arlo's. An agreement was reached to harvest and store the grain until the rights of the parties were determined.

The court, after a lengthy trial, ruled that as a matter of law, Virgil was the agent of Arlo, that Shaffer was entitled to one-third of the crop under the lease because he provided seed, and that Shaffer was entitled to foreclosure on the machinery. The court then submitted the remaining issues to the jury in the form of eight interrogatories. In brief, the jury found that Arlo did not abandon the lease; that Shaffer necessarily spent $2079.40 for planting and $2512.90 for harvesting on the Arlo lease; that S. B. Peterson's cost of harvesting was $1772.35; and that $800.00 of the $2000.00 loan of June 3

was spent on the Arlo lease. The court then entered judgment according to these findings.

Arlo is here by writ of error challenging the sufficiency of the evidence to support the findings of the jury. He asserts also that the trial court abused its discretion in foreclosing the mortgages and in assessing costs and interest against the plaintiff.

First Question to be Determined.

*Was there sufficient evidence to support the findings of the jury that Shaffer had expended the specific sums on the Arlo lease and that $800.00 of the $2000.00 loan had also been spent on that lease?*

This question is answered in the affirmative.

■ Plaintiff's argument, that there was no evidence to support the specific sums allocated to the Arlo lease, is predicated on the co-mingling of the expenses on both leases and the farming of the two leases without allocation of specific sums to each. The evidence is clear that both leases were developed, planted and harvested. Some of the money advanced was spent on the Arlo lease. The court correctly instructed the jury that it might determine the amount spent on the entire acreage, determine the cost per acre, and then multiply the per acre costs by the acreage of the Arlo lease.

■ Plaintiff next argues that the findings of the jury must be disapproved because they do not exactly match the apportioned share of the total expenses claimed by Shaffer, and cites *Jensen v. Nall,* 53 Colo. 212, 124 Pac. 471, to support his conclusion that the jury must find the exact amount of damages asked or none at all. That case is distinguishable from the one at bar. In the Jensen case the prayer was for specific commissions due the plaintiff, but here there was no contract setting the exact amount of damages. See annotation 174 A.L.R. 765. Plaintiff does not contest the right of Shaffer to recover his necessary reasonable costs in growing and harvesting the grain. Therefore, the jury need not find that Shaffer

is entitled to his exact expenses, but only those which are reasonable and necessary. It is the province of the jury to determine those amounts.

The court, of course, retains the power to review a verdict for damages to determine if the jury was capricious, arbitrary or swayed by emotion. See *Knaus v. Yoder*, 98 Colo. 1, 52 P. (2d) 1152. Reviewing the evidence, we find that the figures returned by the jury are near the apportioned amounts testified to by Shaffer and that it is clear they were reached after fair deliberation.

Second Question to be Determined.

*Did the court abuse its discretion in not granting a stay of execution to the plaintiff on the notes and in assessing costs and interest against him?*

This question is answered in the negative.

The plaintiff was a member of the Armed Forces from late May of 1955 until after the due date of the notes covering the farm machinery. Because of this, he argues, he is entitled to a stay of execution by reason of the Soldier's and Sailor's Relief Act, 50 U.S.C.A. sec. 301, et seq. The Act does not give plaintiff complete immunity from payment; he must show the court the reasons why his ability to pay has been materially affected. *Application of Marks*, 181 Misc. 497, 46 N.Y.S. (2d) 755. The evidence was that Arlo believed he might have saved and earned an additional $1500.00 if he had not been in the Army. This would leave over $2000.00 still due on the notes. The machinery was, at the time of the trial, in such poor condition that it could not be used to raise that amount without extensive repair. The trial court correctly refused to grant a stay because it was clear that the notes could not have been paid even if plaintiff's military service had not intervened.

On the question of assessment of costs, while neither party prevailed on his original allegations, we think the result shows that, substantially, Shaffer was the prevailing party and was entitled to his costs.

The award of interest on part of the $2000.00 note was properly considered by the trial court since C.R.S. '53, 73-1-2, provides that interest shall be allowed upon all moneys after they become due.

The judgment is, therefore, affirmed.

MR. JUSTICE MOORE and MR. JUSTICE DOYLE concur.