[No. 3604.]

The Denver & Rio Grande Railroad Company v.
Spencer et al.

| 25 | 9 |
| s27 | 318 |
| 25 | 9 |
| 30 | 89 |
| 25 | 9 |
| 23 | 153 |

1. Evidence—Res Gestæ.

Where a party was killed at the depot of appellant, a conversation heard between deceased and his daughter-in-law a few days before, in which conversation deceased arranged to meet his daughter-in-law at the depot at that time, was admissible as a part of the *res gestæ* to explain deceased's purpose in going to the depot grounds at that particular time.

2. Instructions—Contributory Negligence.

An instruction that in effect told the jury that if they believed from the evidence that the deceased was guilty of negligence which contributed directly to the accident, then plaintiffs could not recover, unless they further believed from the evidence that the conduct of defendant's servants was willfully or wantonly reckless, is objectionable because it fails to state the particular circumstances under which the wanton or reckless conduct of a defendant absolves the injured party from the consequences of his contributive act; also because it announces an exception or qualification of the prevailing doctrine of contributory negligence as being the general rule; and seems to recognize the doctrine of comparative negligence, which is not recognized in this jurisdiction.

3. Same.

The rule announced is applicable only, when, notwithstanding the contributory negligence of the party injured, the defendant's servants, after becoming aware of the danger to which he has exposed himself, might by ordinary care have avoided the injury, and are guilty of such conduct as will imply an intent or willingness to cause the injury.

4. Same—Comparative Negligence.

The rule of comparative degrees of negligence does not prevail in this state. If the injured party's negligence contributed in any degree as the proximate cause of the injury, there can be no recovery; and his negligence, however gross, would not exempt the defendant from liability for an injury willfully and intentionally inflicted.

5. Same.

The instructions should in all cases be based upon the evidence, and an instruction, no matter how correct the principle which it may announce, that impliedly assumes the existence of evidence which was not given, is erroneous.

6. Same—Measure of Damage.

The recovery of damages authorized by statute in case of death by neg-

ligence, is purely compensatory, and is limited to the pecuniary loss to the party, that may be entitled to sue, resulting from the death. An instruction that omits this limitation and leaves the jury at liberty to find any amount they may deem fair and just, not exceeding the maximum of $5,000, regardless of the fact whether plaintiffs suffered any pecuniary loss by the death of deceased or not, is erroneous.

*Appeal from the District Court of Arapahoe County.*

This is an action brought by Henry C. Spencer, Louis E. Spencer and Mary E. Dudley, to recover damages for the death of their father, Charles H. Spencer, alleged to have been caused by the negligence of the Denver & Rio Grande Railroad Company. It appears that on August 16, 1892, the deceased went to the depot of defendant company at Colorado Springs to meet his daughter-in-law, who was expected to arrive from Denver on the south bound train, which was due at that place on the afternoon of that day. There are several tracks running north and south in front of the depot, the ground between them being planked over. At the time of the accident a Rock Island train stood upon the second track from the depot, facing north. The employés of defendant company had left a baggage truck standing between this train and the next track east. A train of defendant company coming in from the north, on this track, struck the truck, throwing it against and upon deceased, inflicting injuries that caused his death. The trial resulted in a verdict and judgment for the sum of $5,000, being the maximum amount allowed by the statute. To reverse this judgment the company prosecutes this appeal.

Messrs. Wolcott & Vaile and Mr. H. F. May, for appellant.

Mr. N. Q. Tanquary and Mr. Henry Howard, Jr., for appellees.

Mr. Justice Goddard delivered the opinion of the court.

Error is assigned upon the admission of certain evidence, and the giving of certain instructions. For the purpose of showing that deceased was upon the depot. grounds at the time the accident occurred, to meet his daughter-in-law, who was expected to arrive on defendant's train, witnesses were permitted to testify over defendant's objection, that they heard him make an arrangement to that effect with her a few days previous. Counsel for appellant insist that this testimony was mere hearsay, and therefore inadmissible. We do not so regard it. The conversation testified to was explanatory of, and so connected with, the act of deceased in going to the depot grounds on that particular occasion, as to become a part of the *res gestœ*, and admissible as illustrative of that act. The circumstances under which the declaration was made excludes the idea that it was designed to serve any other than the purpose indicated, and we think clearly comes within the following definition of *res gestœ* as given by Mr. Wharton:

" The *res gestœ* may be therefore defined as those circumstances which are automatic and undesigned incidents of a particular litigated act, and which are admissible when illustrative of such act. These incidents may be separated from the act by a lapse of time more or less appreciable; they may consist, as we will see, of sayings and doings of anyone absorbed in the event, whether participant or bystander; they may comprise things left undone, as well as things done, their sole distinguishing feature is that they must be the automatic and necessary incidents of the litigated act, necessary in this sense, that they are part of the immediate preparation for, or emanations of, such act; and are not produced by the calculated policy of the actors." Wharton on Ev. § 259.

We think this testimony was properly admitted. By the pleadings and the evidence, the question whether the deceased was guilty of contributory negligence was made an important issue in the case. In instructions Nos. 12 and 13 the jury are told in effect, that if they believed from the

evidence that the deceased was guilty of negligence which contributed directly to the accident, then the plaintiffs could not recover, unless they further believed from the evidence that the conduct of defendant's servants was willfully or wantonly reckless. This direction is objectionable because it fails to state the particular circumstances under which the wanton or reckless conduct of a defendant absolves the injured party from the consequences of his contributive act. It announces an exception or qualification of the prevailing doctrine of contributory negligence as being the general rule; and in so doing seems to recognize the rule of comparative degrees of negligence, a doctrine that is not recognized in this jurisdiction. In other words, the rule announced is applicable only when, notwithstanding the contributory negligence of the injured party, the defendant's servants, after becoming aware of the danger to which he has exposed himself, might by the exercise of ordinary care, have avoided the injury, and are " guilty of such conduct as will imply an intent or willingness to cause the injury." *C. R. I. & P. Ry. Co. v. Crisman,* 19 Colo. 30; *Denver & B. P. R. T. Co. v. Dwyer,* 20 Colo. 132.

Instruction No. 14 recognizes this qualification, and in the main states the rule correctly, but is erroneous in limiting its application to a case where the injured party was guilty of slight negligence only. As before said, the rule of comparative degrees of negligence does not prevail in this state, and it is immaterial what the extent of the injured party's negligence may have been, if it contributed in any degree as the proximate cause of the injury, there can be no recovery; and, on the other hand, his negligence, however gross, would not exempt the defendant from liability for an injury willfully and intentionally inflicted.

These instructions are not only subject to the foregoing criticism, but are objectionable for the further reason that they are not based upon any evidence in the case. It does not appear from the testimony that any servant of the defendant saw the danger to which deceased was exposed in

time to have averted it, or at all. While, on the other hand, it does appear that the truck was left standing parallel between the two tracks, and in such a position that the incoming train of defendant would have cleared it, had it not been moved; that in fact the engine and first coach did pass it, and it was struck by the forward end of the second coach. Mr. Ebert, the engineer in charge of the engine, testified that he saw the truck, noticed the position of it in particular, when within fifty feet of it; drew the fireman's attention to it and asked him if he thought it would clear; he said yes, he thought it would; that he had his train under perfect control to stop, if the engine did not clear the truck; that his engine did clear it. He released the air brake, and the engine dropped down very slowly past the truck. Jeremiah Cronan, the fireman, testified that he was on the left hand side of the engine, noticed the baggage truck, knew where it was, and that the engine cleared it about a foot or more. There is no testimony that the deceased was near the truck at this time, or that the engineer saw him near it at any time. On the other hand, there is evidence to the effect that he approached the train at a rapid gait, and reached the truck after the engine had passed it; that he struck the truck, causing it to change its position, and collide with the front end of the second coach. To this state of facts, the rule sought to be announced is inapplicable, and if correctly given, would have been misleading in that it assumes a state of facts not shown by the evidence.

"The instructions should in all cases be based upon the evidence, and an instruction, no matter how correct the principle which it may announce, that impliedly assumes the existence of evidence which was not given, is erroneous." *Fisk v. G. E. L. Co.*, 3 Colo. Ct. App. 319; *Burlington & Colo. R. R. Co. v. Liehe*, 17 Colo. 281.

Error is also assigned upon the giving of the following instruction:

"XVI. You are further instructed that it is provided by a statute in this state that whenever the death of a person shall be caused by the wrongful or negligent act of another,

and the act is such as would, if death had not ensued, have entitled the party injured to have maintained an action to recover damages in respect thereof, then the person who, or the corporation which, would have been liable if death had not ensued, shall be liable for an action for damages. It is further provided by said statute that under such circumstances the children of the deceased may sue in their own name to recover such damages as the jury may deem fair and just as shown by the testimony, not exceeding $5,000."

The language of the statute referred to is: "And in every such action the jury may give such damages as they may deem fair and just, not exceeding $5,000, with reference to the necessary injury resulting from such death to the surviving parties who may be entitled to sue." Sec. 1032, Gen. Stats.; Mills' Ann. Stats. sec. 1510.

It has been frequently held by this court that the recovery authorized by this statute is purely compensatory, and is limited to the pecuniary loss resulting from the death, to the party who may be entitled to sue. As was said in *Pierce v. Conners*, 20 Colo. 178:

"The true measure of compensatory relief in an action of this kind, under the act of 1877, is a sum equal to the net pecuniary benefit which plaintiff might reasonably have expected to receive from the deceased in case his life had not been terminated by the wrongful act, neglect or default of the defendant. * * * But it must be borne in mind that the recovery allowable is in no sense a *solatium* for the grief of the living occasioned by the death of the relative or friend, however dear. It is only for the pecuniary loss resulting to the living party entitled to sue resulting from the death of the deceased that the statute affords compensation."

The instruction as given omits this important limitation, and leaves the jury at liberty to find any amount that they might deem fair and just, not exceeding the maximum of $5,000, regardless of the fact whether the plaintiffs suffered any pecuniary loss by the death of the deceased, or not.

That the jury were misled by this instruction, notwithstanding the rule as to the measure of damages was cor-

rectly stated in instruction No. 11, we think is apparent from an examination of the evidence introduced upon this subject. It appears therefrom that the plaintiffs were adult children of deceased, and his sole surviving heirs, his widow having died after the accident and before the commencement of the suit. Neither of them derived any support from the deceased. Therefore the pecuniary loss, if any, that resulted to them by reason of the death, was in being deprived of their share of the money that he might accumulate during his expectancy of life. The evidence, though somewhat meager, is to the effect that deceased, at the time of his death was sixty-eight years of age, and was receiving a salary of $1,500 a year as cashier of a bank, and the sum of $500 a year as notary and conveyancer in connection with the bank; and was receiving an income from dividends on bank stock and real estate investments of about $1,500 per annum. From all of these sources he was deriving a net income of from $1,500 to $1,700 a year.

In estimating the probable savings that the deceased would have accumulated, but for his premature death, the income received from his investments should not be considered, since these investments passed to plaintiffs upon his death, and they came into the immediate enjoyment of the income therefrom. *Grand Trunk Ry. Co. v. Jennings*, L. R. 13 App. Cases, 800; *Pym v. Great Northern Ry. Co.*, 2 B. & S. 759; *Pym v. Great Northern Ry. Co.*, 4 B. & S. 396.

The only income, therefore, that was cut off by the premature death of deceased, from which plaintiffs might expect to have derived any pecuniary benefit, was his personal earnings which it appears were nearly, if not quite, consumed by his expenses of living. It is therefore evident that the jury were not controlled by the evidence in estimating the amount that plaintiffs were entitled to recover. For the foregoing reasons the judgment is reversed, and the cause remanded for a new trial.

*Reversed.*

Chief Justice Campbell not sitting.