ELEANORE A. MATHEWS v. GREAT NORTHERN RAILWAY COMPANY and Others.[1]

November 14, 1900.

Nos. 12,434—(47).

### Evidence—Declaration of Actor to Explain His Act.

When it is material to show the purpose or reason for the departure of a person, or of an act done by him, his declarations of his purpose or reason for so doing, made at or about the time he acts, if made in a natural way, and without any circumstances of suspicion, are admissible as original evidence.

[1] Reported in 84 N. W. 101.

Death by Wrongful Act—Verdict Sustained.

> *Held*, in this, a personal injury case, that the trial court did not err in its rulings as to the admission of evidence, nor in its instructions to the jury, and that the verdict is sustained by the evidence.

Action in the district court for Ramsey county by plaintiff, as administratrix of the estate of Thomas P. Mathews, deceased, to recover $5,000 damages on account of his death. During the course of the trial before O. B. Lewis, J., and a jury, the action was dismissed as to the Great Northern Railway Company. At the close of the trial the court directed a verdict in favor of the remaining defendants, except Archibald Guthrie and others, copartners as A. Guthrie & Co., against whom the jury rendered a verdict for the amount demanded. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendants last-named appealed. Affirmed.

*H. Richardson* and *C. Wellington*, for appellants.

*A. T. Ankeny* and *Albert Johnson*, for respondent.

START, C. J.

The plaintiff's intestate, Thomas P. Mathews, was killed by the derailment of a construction train upon which he was riding, which was operated and controlled by the defendants Guthrie & Co. This action was brought against them and other parties by the widow of Mr. Mathews, as administratrix of his estate, to recover damages resulting from his death, which was caused, as the complaint alleges, by the negligence of the several defendants. At the close of the evidence the trial court directed a verdict for all of the defendants except Guthrie & Co., hereafter designated as the defendants, and submitted the cause to the jury as to them. Verdict for the plaintiff for $5,000, and the defendants appealed from an order denying their motion for judgment notwithstanding the verdict, or for a new trial.

The assignments of error logically fall into three general groups: First. Did the trial court err in its rulings as to the admissibility of evidence? Second. Did it err in its instructions to the jury? Third. Is the verdict sustained by the evidence?

1. The defendants were engaged as contractors in building for the

Eastern Railway Company of Minnesota a railway line about one hundred miles long between Deer River and Fosston, in this state. They sublet the grading to various parties, the track-laying to Brennan & Son, and the bridge and culvert work to the firm of Mathews & Keith, of which the plaintiff's intestate was a member. The defendants operated a construction train to aid in the execution of the work, but the track-laying and bridge firms hired their own men, and paid them for their services. The contract between the defendants and Mathews & Keith provided that the defendants should supply all timber and iron on the cars for the bridges at the most convenient points, free of charge, but the bridge contractors were to take the timber and iron from the cars. There was no provision in the contract for the transportation of the bridge contractors or any of their employees.

On August 7, 1898, the construction of the railway had been so far completed westward and across the Mississippi river at Bemidji that the construction train could cross the bridge at that point, although the bridge was not then entirely completed. On the day named the construction train started out from its siding, six miles east of the bridge, and when it reached the bridge it left a car of bridge material thereon, and proceeded westward across the bridge. The train on its return took the empty car from which the bridge material had been removed. The plaintiff's intestate, Mr. Mathews, boarded the train on this return trip at the bridge, and the train proceeded on its way towards the siding for dinner and more material. It was necessary to back the train, and it ran upon an obstruction on the track. The car on which Mr. Mathews was riding was derailed, and he was thrown upon the track and run over by a car, and so injured thereby that he died on the next day.

Upon the trial it was an important issue whether or not Mr. Mathews was rightfully upon the train, with the consent of the defendants, at the time he was injured. As bearing upon this issue, the plaintiff was permitted, over the objection and exception of the defendants, to give in evidence the testimony of a witness (Mr. Langdon), tending to show that Mr. Mathews boarded the train for the purpose of going back for the balance of the material that was

necessary for the completion of the bridge, which was to be loaded at the siding. It is true, as claimed by the defendants, that the testimony of the witness was based on a conversation with Mr. Mathews, and his declarations had and made at the time he boarded the train. But it does not follow from this conversation that the objection that it was hearsay and incompetent was well taken. If it was material to show for what purpose the deceased boarded the train, it was competent to prove it by his statements and declarations made at or about the time he was in the act of getting upon the train. The evidence was competent, for it falls within the rule that when it is material to show the purpose or reason for the departure of a person, or of an act done by him, his declarations of his purpose, or reason for so doing, made at or about the time he acts, if made in a natural way, and without any circumstances of suspicion, are admissable as original evidence. 1 Greenleaf, Ev. (16th Ed.) § 162, "d," "e"; State v. Hayward, 62 Minn. 474, 65 N. W. 63; O'Connor v. Chicago, M. & St. P. Ry. Co., 27 Minn. 166, 6 N. W. 481; Mutual L. Ins. Co. v. Hillmon, 145 U. S. 285, 12 Sup. Ct. 909; Com. v. Trefethen, 157 Mass. 180, 31 N. E. 961.

It is, however, urged that the fact, if it be such, that the deceased was on the train for the purpose of going down to the siding to see about getting up the bridge material, was immaterial, because there was no evidence that his purpose was communicated to the conductor of the train. Whether so expressly communicated or not, the fact would be material, in connection with the other evidence in the case, as tending to show that at the time of the accident he was on the train for a purpose connected with the work of construction, and hence rightfully there. The trial court did not err in receiving the evidence.

The witness Langdon was also permitted, over the defendants' exception, to give testimony tending to show that it was the custom of Mr. Mathews and others connected with the bridge work to ride back and forth on the construction train from point to point as the work progressed, and that no objections were ever made by any one. The defendants urge that neither the defendants, nor any of their agents who had authority to act for them, ever knew of this

custom, and therefore the evidence was immaterial. There was no direct evidence that they did so know. But the very purpose of the evidence was to show, from the nature and magnitude of the work to be done, the manner in which the several subcontractors executed their part of the work, the relation of each part of the work to all other parts of it, and the custom of those engaged in the work to ride on the construction train without objection, that the defendants must have known and consented to Mr. Mathews and others riding, when engaged in the work, on the train. The evidence was competent and material for this purpose, and it was properly received. The weight to be given to it was for the jury.

2. The trial court, at defendants' request, instructed the jury that, if the deceased was a bare licensee upon the train, the defendants were not bound to exercise any care towards him, except to refrain from wanton and wilful negligence. The court, however, submitted to the jury the question whether the deceased was on the train with the consent and invitation, express or implied, of defendants, and in this connection instructed them, in effect, that if they found from the evidence that it was the habit of the deceased, his partner, and the men engaged in the construction of the railway line, to ride on the construction train to and from their work to their camps and boarding places, and to the different parts of their work, and this practice was known to the defendants, and they made no objections to it, and the deceased was on the train by reason of such custom, they would be justified in finding that he was rightfully there, not as a passenger, but by the invitation and consent of the defendants. The defendants excepted to the instruction on the ground that there was no evidence to go to the jury upon the question of the defendants' knowledge of the custom. We are of the opinion that there was.

The evidence we have already referred to tended to establish such knowledge on the part of the defendants. The work in which they were engaged was the building of one hundred miles of railway. To facilitate the work in all of its parts, they controlled and operated the construction train. They were interested in the work of construction, as they were the contractors, and had a common inter-

est with the deceased in having the bridge work done. The carrying of the subcontractors and their employees to and from their work tended directly to facilitate the work, and an invitation and consent so to ride may be inferred from such common interest, and the evidence that such was the custom, and that there were no objections made by the defendants. The evidence justified the giving of the instruction excepted to.

The question whether the court erred in refusing to direct a verdict is disposed of by our answer to the next question.

3. Was the evidence sufficient to sustain the verdict? We answer the question in the affirmative. There was, as already stated, evidence tending to show that the deceased was on the train by the defendants' implied invitation and consent. If such were the case, —and the jury must have so found under the instructions of the court,—the defendants owed to him the duty of ordinary care in the management of the train. While the evidence is conflicting as to whether such care was exercised, we are of the opinion, upon the whole evidence, that it was a question of fact for the jury, and that the verdict on this point is fairly sustained by the evidence.

Order affirmed.