STATE *vs.* WALTER L. LONG.

1. HOMICIDE—DECLARATIONS OF DECEASED ON MORNING OF HOMICIDE HELD ADMISSIBLE, THOUGH NOT RES GESTAE.

Declarations of deceased made on the morning of the homicide as to where he was going that night, though not a part of the *res gestæ*, were admissible to show his purpose or intention at that time.

2. HOMICIDE—ON ISSUE OF SELF-DEFENSE, UNCOMMUNICATED THREATS BY DECEASED HELD ADMISSIBLE.

Where accused's defense to a prosecution for homicide is self-defense, evidence that deceased made threats against accused, though not communicated to him, are admissible to show that deceased began the affray.

3.  HOMICIDE—OBJECTION TO QUESTION AS TO DECEASED'S CUSTOM OF CARRY-
ING MONEY HELD PROPERLY OVERRULED.

In a prosecution for murder, an objection to a question as to deceased's habit of carrying a considerable sum of money on his person, to show that robbery was the motive, was properly overruled.

4.  HOMICIDE—EVIDENCE THAT DECEASED HAD LARGE SUM OF MONEY
THREE WEEKS BEFORE HOMICIDE HELD ADMISSIBLE.

It is proper to prove that deceased had money in his possession shortly before the homicide to show that the motive of the crime was robbery, how far back the inquiry should go being dependent on the character and business habits of deceased and other circumstances which would make it probable that he still had the money at the time of his death, and evidence that deceased had money three weeks before his death was therefore admissible on the state's offer to show that it was not his habit to spend much money.

(*July* 2, 1923.)

RICE, HARRINGTON and RICHARDS, J. J., sitting.

*Sylvester D. Townsend, Jr.*, Attorney-General, *Robert G. Houston* and *Clarence A. Southerland*, Deputy Attorneys-General, for the State.

*James M. Tunnell* for defendant.

Court of Oyer and Terminer, Sussex County, June Term, 1923

Indictment for murder, No. 18, April Term, 1923.

The State claimed that robbery was the motive for the crime. The evidence produced by it showed that the dead body of one Elisha W. Hudson was found lying along a path leading through the woods about forty-five yards from the duPont Boulevard, near Selbyville, Sussex County, Delaware, on Friday, April 20th, 1923, at about eight A. M.; that the left hip pocket of his trousers was turned inside out, and an open safety pin was sticking in his trousers at the opening of the pocket; that eight dollars and some few cents were found in a purse in the left side pocket of the trousers of the deceased; that deceased was the father of the step-mother of the defendant, and that defendant was well acquainted with his habits; that the defendant had originally lived in Sussex County, near Selbyville, Delaware, but then lived in the City of Wilmington; that the defendant was in Sussex County in a hired automobile in the vicinity of Selbyville on Wednesday and

on Thursday, the day before the discovery of the body of Hudson; that he promised to pay the driver of this automobile $55.00 for the round trip, from Wilmington to Selbyville and that vicinity but on the way back to Wilmington on Thursday night, April 19th, he insisted on the machine being driven at full speed, and, producing a roll of bills, gave the driver a one hundred dollar bill therefrom, instead of the $55.00 promised him; that the defendant had met and talked with Hudson on the night of Wednesday, April 18th; that he was along the duPont Boulevard in the vicinity of the place where the dead body of Hudson was afterwards found on the evening of Thursday, April 19th; that Hudson was also seen standing along the Boulevard in the same vicinity on the same night; that, prior to the death of Hudson, the defendant was in need of money; that, after the crime was committed, he paid several old bills, made several purchases involving the expenditure of a considerable sum of money and still had a considerable sum of money on his person at the time of his arrest; that two one hundred dollar bills were found hidden behind the radiator in his room; that the condition of these bills indicated that they had been wet, and had been dried by the heat in the radiator; that, after his arrest, the defendant made contrary statements as to where he got the money found in his possession; that a physician examined the dead body of Hudson at about nine o'clock on the morning of Friday, April 20th, 1923, and stated that, in his opinion, he had then been dead from eight to twelve hours.

[1, 2] A witness for the State, after testifying that she saw the deceased at the mail box along the road in front of her home on Thursday morning, April 19th, at about nine or ten o'clock, was asked:

"State what, if anything, Mr. Hudson (meaning the deceased) said at that time with reference to where he was going" (that night)?

The question was objected to by the attorney for the defendant on the ground that it was an attempt to find out what was said by the deceased which would, therefore, constitute hearsay evidence, and on the further ground that any declaration made by the de-

Statement

ceased at that time was not a part of the *res gestae*, and, consequently, did not come within that exception to the hearsay rule.

Southerland, Deputy-Attorney-General, cited: *State v. Farnam*, 82 *Or.* 211, 161 *Pac.* 416; 3 *Wigmore on Ev., Sec.* 1725; *State v. Power*, 24 *Wash.* 34, 63 *Pac.* 1112; 63 *L. R. A.* (*Old Series*) 902; *People v. Atwood*, 188 *Mich.* 36, 154 *N. W.* 112; *State v. Hayward*, 62 *Minn.* 474, 65 *N. W.* 63; *Bazanno v. State*, 60 *Texas Cr.* 457, 132 *S. W.* 777; *Hunter v. State*, 40 *N. J. L.* 495, 543; *State v. Smith*, 49 *Conn.* 376; *State v. Mortensen*, 26 *Uta.* 312, 72 *Pac.* 562, 633; *U. S. v. Nardello*, 15 *D. C.* (4 *Mackey*) 503; *Thomas v. State*, 67 *Ga.* 460; *Weightnovel v. State*, 46 *Fla.* 1, 35 *So.* 856, 861; *Underhills Crim. Ev., Sec.* 510. He contended that while there was some conflict in the authorities as to the ground on which it was admissible, what a deceased person said at the time he started out from home on the day in question, under a well recognized exception to the hearsay rule, was admissible to show a state of mind or purpose, and that this question was admissible on that principle.

RICE, J.: The evident purpose of the question is to show that the deceased and the defendant were together at a time when the murder could have been committed. It is not claimed that the deceased was starting or about to start to meet the defendant when the declaration sought to be proved was made by him. The statement of the deceased, therefore, neither accompanied nor characterized any act relevant to the issue. While an examination of the authorities above cited will show that declarations of a deceased person under such circumstances are some times admitted on the ground of being a part of the *res gestae*, as we view it, they are not admissible on that ground, (opinion of Start, C. J., in *State v. Hayward*, 62 *Minn.* 474, 65 *N. W.* 63); and we do not understand that the State contends that they are. Such declarations are also admitted in some cases on the ground that they are verbal acts. (*State v. Hayward, Supra*). If, however, the doing of an act is material, then the existence of a design or plan to do that specific act is relevant to show that the act was probably done as planned (1 *Wigmore on Ev., Sec.* 192; *Greenleaf on Ev.*,

*Sec.* 126a); and, considering the plan or design as a condition of mind, a person's own statements of a present existing state of mind when made in a natural manner, under circumstances dispelling suspicion, and containing no suggestion of sinister motives, only reflect the mental state, and are, therefore, competent to prove the condition of the mind when made; or, in other words, what such person's purpose or intention then was. A similar principle has been applied in this state in a suit for alienation of affections, to show the wife's feeling toward her husband by her declarations. *Rash v. Pratt,* 1 *W. W. Harr.* (31 *Del.*) 18, *111 Atl.* 225. The purpose of the question is not to show that the deceased was at some time at a particular place with a particular person because he *said* he was going there,—and it clearly would not be admissible on that ground,—but to show his purpose or intention at the time he made such statement as a circumstance tending to show that he did as he planned or intended to do. In a trial on an indictment for murder, where the defendant relies on self-defense, evidence that threats were made by the deceased person against the defendant, though not communicated to him, are admissible to show that the deceased began the affray. *State v. Powell,* 5 *Penn.* 24 (32-34).[1] While there are certain limitations on this rule, including the limitation that in order to make such evidence admissible it must be uncertain as to which was the agressor, the principle involved would seem to be similar. For the reasons above stated our conclusion is that the declarations in this case are admissible as an exception to the hearsay rule. (*Wigmore on Ev.,* vol. 3, Sec. 1725, 1726, 1727; *Greenleaf on Ev.,* Sec. 126a. *Supra; State v. Farnam,* 82 *Or.* 211, 161 *Pac.* 417, *Ann. Cas.* 1918A, 318; *State v. Mortensen,* 26 *Utah* 312, 73 *Pac.* 562, 569 (633); See also *Mutual Life Ins. Co. v. Hillam,* 145 *U. S.* 285, 12 *Sup. Ct.* 909, 36 *L. Ed.* 706, and *Commonwealth v. Trefethen,* 157 *Mass.* 185, 31 *N. E.* 961, 24 *L. R. A.* 235. We, therefore, overrule the objection, reserving to defendant's attorney the right to move to strike out the reply of the witness, if it should not prove to be material.

The witness answered the question as follows:

[1] See *State vs. Lynch,* 2 *W. W. Harr.,* (32 *Del.*) 597.

"Well, he told me that she (Mrs. Ella Baull) asked him to come around to see her, and he told. her that he couldn't come, that he was going away soon, and he told her that he had a date that night to meet a girl and a fellow on the duPont Road at about eight o'clock, and I am afraid to say whether he said the boy was from Wilmington and the girl was from Philadelphia, because I wouldn't like to say".

[3]  Houston, Deputy Attorney-General, in endeavoring to prove that it was the habit of Elisha W. Hudson to carry a considerable some of money on his person, asked the following question:

"Do you know his habit in relation to his money?"

The attorney for the defendant objected to the question, unless the State proposed to follow it up by proving that the deceased had money on him at the time of his death.

RICE, J.: On the authority of the Supreme Court in *Roberts v. State*, 2 *Boyce* 385 (391), 79 *Atl.* 396, *Ann. Cas.* 1914 D, 1266, the Court overrules the objection.

[4]  A witness for the State, after testifying that the deceased had a considerable sum of money on his person in the shape of notes about three weeks before his death was asked:

Q.  Did you see any of the denominations of those notes?

A.  Yes, sir; I saw some one hundred dollar bills.

The attorney for the defendant moved to strike out the answer to the question on the ground that  proof of what money Elisha W. Hudson had on his person three weeks before he was murdered was too remote, and, therefore, not  material to show how much money he had on his person at the time of the murder. On the promise of the State to show that Hudson was a sawyer in a mill, and that it was not his habit to spend much money, the motion of the defendant was overruled.

RICE, J., in ruling on the defendant's motion, said, that it was perfectly proper for the State to prove that the deceased had money in his possession shortly before his death, and  that  how far back the inquiry would be permitted to go, depended upon the character and business habits of the deceased, as well as on all

other circumstances which rendered it more or less probable that if he had money on his person prior to the time of his death, that he still had it at the time of his death (*Kennedy v. People*, 39 N. Y. 245; *Commonwealth v. William*, 170 *Mass.* 461, 50 *N. E. R.* 1035; *Commonwealth v. Richmond*, 207 *Mass.* 249, 93 *N. E. R.* 816); and that, if the State produced the additional proof promised, evidence as to the money that he had three weeks before his murder was entirely proper.