# No. 18,339.

## Alexander Film Company, et al. *v.*
## Industrial Commission of Colorado, et al.
(319 P. [2d] 1074)

Decided December 23, 1957.

Mr. Duane O. Littell, for plaintiffs in error.

Mr. Duke W. Dunbar, Attorney General, Mr. Frank E. Hickey, Deputy, Mr. Peter L. Dye, Assistant, for Industrial Commission of Colorado.

*En Banc.*

Mr. Justice Frantz delivered the opinion of the Court.

Esther Louise Olson, the widow and sole dependent of Carl E. Olson, deceased, was awarded compensation and other relief for his death which the Industrial Commission of Colorado held arose out of and in the course of his employment with Alexander Film Company. Having exhausted their administrative remedies, the company and its insuror filed their complaint in the district court in Denver, seeking thereby to have the award set aside and vacated.

The record of the claim before the Commission was certified to the district court, where the matter was heard, taken under advisement, and in due course concluded by the entry of a judgment affirming the award. It is this judgment that the company and its insuror would have us reverse on this review.

Grounds for reversal are predicated on (1) the admission, over objection, of certain testimony, and (2) the finding that the deceased sustained fatal injuries arising out of and in the course of his employment. The assailed testimony assumes an insignificant part in this case, as will be made to appear in our resolution of the second question.

The film company is located in Colorado Springs, Colorado. It produces advertising and motion picture

films, and for this purpose assigns the supervision of its undertakings to directors. At the time of his death Mr. Olson was one of its directors. His residence was Colorado Springs.

The film company had entered into a contract to produce playlets and scenarios for the Pontiac Division of General Motors Corporation. It assigned Mr. Olson to take charge of the work to be performed in pursuance of the contract. This required Mr. Olson to be present and manage production at the proving grounds of Pontiac Motors, located at or near Pontiac, Michigan.

As director Mr. Olson was responsible for securing "the cast, the location, the shooting locale, coordination of the work that is to go into the making of motion pictures for the company." When on location he directed the "shooting of the moving pictures." Since he was on the ground he was the man of decision on questions of what scenes should be shot and what should be in the script. His evenings generally were devoted to going over the scripts to be used in the "next day's shooting." It was not unusual for a script to be refined or rewritten.

Mr. Olson was permitted to select places for lodging and eating while on a mission for the film company requiring him to be at some distance from Colorado Springs. Upon the completion of his work, he was reimbursed for all expenses incurred during the time he was away from Colorado Springs.

While performing his assignment in Michigan, Mr. Olson resided in a motel. Shortly after four o'clock in the afternoon of the day of the accident, he directed Mr. Carrier, another cameraman, to take two shots. He told Mr. Carrier that he was returning to the motel (an hour's distance from the proving grounds) for the purpose of revising the next day's script. Mr. Carrier testified that it would take two and a half to three and a half hours to accomplish the revision contemplated by Olson. On the ground that Carrier's testimony was hearsay, timely objection was made to its admission.

.

The evidence shows that Mr. Olson returned to his motel about six o'clock in the evening, and shortly thereafter ate his evening meal at a restaurant located across the street from the motel. At approximately eight o'clock, while attempting to cross the road between the restaurant and the motel, he was struck by a motor vehicle. He died the next day as a result of the injuries received.

■ Were the statements of the deceased to Carrier, relating what he intended to do that evening, inadmissible because hearsay? We think that statements wearing the badges present here are within an exception to the hearsay rule and admissible. Here their admissibility depended on (1) whether they related to a then existing state of mind (*Mutual Life Ins. Co. v. Hillmon*, 145 U.S. 285, 12 S.Ct. 909, 36 L.Ed. 706), (2) whether they were made in the ordinary course of things as the usual information a man would communicate to another under the circumstances (*Hunter v. State*, 40 N.J.L. 495), and (3) whether they were "made under circumstances which would exclude any suspicion of an intention to make evidence to be used at the trial" (*Commonwealth v. Trefethen*, 157 Mass. 185, 31 N.E. 961).

■ Sanction for the admission of such statements as original evidence forming an exception to the hearsay rule has gradually grown in the law of evidence. As a result there is today a solid body of authority enunciating the rule that relevant ante-incident statements of intention to do some act are admissible as original evidence. *State v. Journey*, 115 Conn. 344, 161 Atl. 515; *State v. Long*, 32 Del. 380, 123 Atl. 350; *Mathews v. Great Northern R. Co.*, 81 Minn. 363, 84 N.W. 101, 83 Am. St. Rep. 383; *Lewis v. Lowe & Campbell Ath. Goods Co.*, (Mo.) 247 S.W. (2d) 800; *Ervin v. Myrtle Grove Plantation*, 206 S.C. 41, 32 S.E. (2d) 877, are a few typical decisions. See also 113 A.L.R. 288 and Wigmore on Evidence (3rd Ed.), §1725.

In following this trend courts have broken away from

the theory that such statements are admissible because they characterize the subsequent conduct of the declarant, or are verbal acts, and hence form a part of the res gestae, as such theory is exemplified in *Denver & R.G.R. Co. v. Spencer,* 25 Colo. 9, 52 Pac. 211; *Denver Tramway v. Brumley,* 51 Colo. 251, 116 Pac. 1051; *Denver v. Midwest Co.,* 109 Colo. 395, 125 P. (2d) 960. Reexamination of the theory of admission of such declarations by this court in a proper case was intimated in *Massie v. People,* 82 Colo. 205, 258 Pac. 226.

It is true that in many cases the problem may be treated as one of res gestae without affecting the results reached, but in other cases such treatment may result in the exclusion of admissible evidence. In some cases the res gestae rule has been attenuated in order to render such statements admissible. We think *Denver & R.G.R. Co. v. Spencer,* supra, a typical illustration of the lengths to which the res gestae rule has been stretched in admitting such statements. In that case arrangements of the decedent made a few days in advance of the act were received in evidence as explanatory of the act under the res gestae rule.

Nor should the verbal acts doctrine be applied. This rule may be invoked where the conduct is equivocal and the words which accompany the act give it meaning. "Verbal acts are utterances which accompany some act or conduct to which it is desired to give a legal effect. When such act has intrinsically no definite legal significance, or only an ambiguous one, its legal purport or tenor may be ascertained by considering the words accompanying it, and these utterances thus enter merely as a verbal part of the act. The use of utterances as verbal acts has four limitations: (a) The conduct to be characterized by these words must be material to the issue; (b) it must be equivocal in its nature; (c) the words must aid in giving legal significance to the conduct; and (d) the words must accompany the conduct.

Wigmore on Ev. (2d Ed.), par. 1772." *Keefe v. State,* 50 Ariz. 356, 72 P. (2d) 425.

■ The doctrine that statements of design or plan are admissible as original evidence, when attended by the three elements above outlined (a present existing state of mind, something said in the usual course of things under the circumstances, and under circumstances excluding an ulterior purpose), represents no radical departure from the previous law on the subject. In adopting the doctrine, we hold that the declarations of Mr. Olson, made on the afternoon before he was fatally injured, were properly admitted in evidence. Having properly received the statements in evidence, the Commission could with propriety, as it did, infer that Mr. Olson was at the time of the injury crossing the road to his motel "to pursue his duties for several hours before retiring."

■ The right to compensation for an injury exists where "both the service being performed and the injury sustained shall arise out of and in the course of the employment." *Industrial Commission v. Anderson,* 69 Colo. 147, 169 Pac. 135; *O. P. Skaggs v. Nixon,* 101 Colo. 203, 72 P. (2d) 1102; C.R.S. '53, 81-13-2. If what the employee is doing is an incident to, or a hazard of, his employment, in the course of which he is injured, it is connected with the employment in such manner as makes his injury compensable. *Industrial Commission v. Anderson,* supra; *O. P. Skaggs v. Nixon,* supra.

■ Mr. Olson, by reason of his employment, incurred the risks necessary and incident to such employment. Away from home the hazards of the road, and those hazards involved in the necessary ministrations of self, were the normal and necessary incidents to the paramount purpose of his presence in Michigan, i.e., the production of playlets and scenarios. Required to be away from his home by the duties of his employment, his compensation covering the expenses necessary and incident to living away from home, any hazards present

in staying at the motel, eating at a restaurant, and in going to and from these places come within the ambit of the compensation act.

No better statement of the law applicable to the facts of this case can be found than the following from the leading case of *Thornton v. Hartford Acc. & Ind. Co.,* 198 Ga. 786, 32 S.E. (2d) 816:

"A traveling salesman is taken away from his home or headquarters by his employment, and, because of the nature of his work, he usually can not return home each night. He must of necessity eat and sleep in various places in order to further the business of his employer; and the employer recognizes these necessities and usually pays the expenses of his lodging and meals, as was done in this case.

"*While lodging in a hotel or preparing to eat, or while going to or returning from a meal, he is performing an act incident to his employment, unless he steps aside from his employment for personal reasons.* Such an employee is in continuous employment, day and night. This does not mean that he can not step aside from his employment for personal reasons, or reasons in no way connected with his employment, just as might an ordinary employee working on a schedule of hours at a fixed location. He might rob a bank; he might attend a dance; or he might engage in other activities equally conceivable for his own pleasure and gratification, and ordinarily none of these acts would be beneficial or incidental to his employment and would constitute a stepping aside from the employment. The eating of meals, while a pleasure indulged in by a traveling salesman and all mankind, is as necessary to the continuance of his duties as the breath of life; and where his duties take him away from his home, his acts of ministration to himself should not — and we believe do not — take him outside the scope of his employment, so long as he performs these acts in a normal and prudent manner. Such activities, the performance of which are necessary to his

health and comfort, while in a sense personal to himself, are nevertheless incidents of his employment and acts of service therein within the meaning of the Workmen's Compensation Act, although only remotely and indirectly conducive to the object of the employment." (Emphasis supplied.)

To like effect are *Walker v. Speeder Mach. Corp.*, 213 Iowa 1134, 240 N.W. 725; *Stansberry v. Monitor Stove Co.*, 150 Minn. 1, 183 N.W. 977, 20 A.L.R. 316; *Kirkpatrick v. Chocolate Sales Corp.*, 127 Nebr. 604, 256 N.W. 89; *Haddock v. Edgewater Steel Co.*, 263 Pa. 120, 106 Atl. 196; *Employers' Liability Assur. Corp. v. Warren*, 172 Tenn. 403, 112 S.W. (2d) 837.

It may be as aptly said here as was said in *Walker v. Speeder Mach. Corp.*, supra, in determining compensability:

"By virtue of his employment, he was where he could not eat at home or at his regular boarding place. He was in a sense living in the employer's quarters, and at the time of the accident was on his way to get a meal furnished to him by the employer. *This was a necessary incident to the work.* He could not do the work without sustaining himself. He was in the city of Pittsburgh solely because he had been ordered there by his employer. He was waiting there to do the work of the employer. While waiting, it was incumbent and necessary that he sustain himself with food. He was in the act of passing between his hotel and the place where food was to be obtained when the accident occurred." (Emphasis supplied.)

We approve the judgment of the trial court, and it must be, and is affirmed.

MR. JUSTICE DAY not participating.