No. 19,280.

THE GENERAL PLANT PROTECTION CORPORATION, ET AL. *v.* THE INDUSTRIAL COMMISSION OF COLORADO, ET AL.
(361 P. [2d] 138)

Decided April 10, 1961.   Rehearing denied May 1, 1961.

Messrs. McComb, Zarlengo & Mott, for plaintiffs in error.

Mr. Duke W. Dunbar, Attorney General, Mr. Frank E. Hickey, Deputy, Mr. Peter L. Dye, Assistant, for defendant in error The Industrial Commission of Colorado.

Mr. Richard D. Casey, for defendant in error Robert Joseph Hupf.

*En Banc.*

Mr. Justice Sutton delivered the opinion of the Court.

Plaintiffs in error by writ of error seek to have set aside an award made by the Industrial Commission awarding compensation to the claimant, Robert Joseph Hupf, for injuries received in an automobile accident which occurred in the State of California on December 22, 1957. An order of a Referee of the Commission granting compensation was affirmed by the Commission and the award of the Commission was in turn affirmed by the District Court.

The facts of the case are that the employer, The General Plant Protection Corporation, operated its business in Colorado and elsewhere. Hupf's employment in Colorado having been terminated, he was given travel money to seek employment with a related partnership of the same name engaged in a like service at Edwards Air Force Base near Lancaster, California. For the purpose of this opinion we shall assume that the referee was warranted in concluding that Hupf was an employee of the corporate respondent at the time he was injured.

There is no substantial variance in the evidence which disclosed that Hupf and two others left Colorado by automobile on December 20, 1957, with instructions to contact the district manager of the partnership in California so as to be able to report for work on Monday

morning, December 23, 1957. The trip was made without incident and Hupf and the two others (Stimac and Yost) arrived at Lancaster, California, just after noon on December 22nd.

The evidence further disclosed that on arrival an attempt was made by the transferees to contact the district manager of the California operation, which being unsuccessful, arrangements were made to meet him later in the evening. After they had finished lunch the men determined to "look the town over" and were so engaged for approximately three hours when Stimac, the owner of the car in which they were all then riding, wanted to have his car greased and checked after the long trip from Colorado. The vehicle was left at a service station and the three transferred to a second car which also had been used on the trip to California. It was then about 6:00 p.m. At about 6:30 p.m. on a highway about a mile or more south of Lancaster this car was involved in an accident and Hupf was injured. Yost, the driver of the vehicle at the time of the accident, testified that the three were "killing time" and were not looking for the district manager when the accident occurred.

For a solution of the problem presented we need only consider one of plaintiffs' grounds urged for reversal. It is that Hupf's injury did not arise out of and in the course of his employment.

Here the actions of claimant Hupf, as above related, can best be described in the aptly descriptive phrase of "a frolic of his own" at the time of the accident. He was "looking the town over" or at best still "killing time" and had strayed far from any necessary or incidental pursuits required of him as an employee. To be eligible for statutory benefits it was necessary for claimant to show that at the time of the injury he was doing something at least incidental to his employment, such as going to or from meals or lodging, as in *Alexander v. Industrial Commission* (1957), 136 Colo. 486,

194

319 P. (2d) 1074, and *Lyttle v. State Fund* (1958), 137 Colo. 213, 322 P. (2d) 1049. From the evidence in this record it is clear that his original employment with General Plant had been terminated and its interest extended no further than to accommodate and assist him in procuring employment elsewhere. Even assuming the relationship of employer and employee had not ceased to exist, claimant was not engaged in any activity relating to or incident to his employment at the time of his injury.

The judgment is reversed and the cause remanded with directions to dismiss the claim.

MR. JUSTICE FRANTZ dissents.

MR. JUSTICE FRANTZ dissenting:

Referee, Industrial Commission, and the District Court of Denver have successively considered the evidence adduced at the hearing on this claim for compensation, and each in due course has responded favorably to the claimant. Considering themselves aggrieved, the employer and the insuror seek reversal of the judgment confirming the award. In this respect we should be mindful that they "may have *questions of law only* reviewed summarily by the supreme court, by writ of error." C.R.S. '53, 81-14-17.

Findings based on conflicting evidence do not create a reviewable problem for this court, since they do not present questions of law. Such has been the ruling of this court where findings have their support in evidence, "although meager" as measured against opposing evidence. Both of these propositions form part of the more familiar literature of compensation law. *Industrial Commission v. Robinson*, 85 Colo. 279, 275 Pac. 903; *Elleman v. Industrial Commission*, 100 Colo. 120, 66 P. (2d) 323.

Within the compass of these rules fall such legitimate inferences as may be drawn from the evidence introduced for and against a claim. Thus, where the evidence

is of a character permitting the Commission a choice of inferences, the determination of what inferences are deducible from the evidence is peculiarly the province of the Commission, and conclusive upon review. *Zuzich v. Leyden Lignite Co.,* 120 Colo. 21, 206 P. (2d) 833.

Now, in this case, we are confronted with a situation resolvable by the application of this statute and these rules. Applied, there is no reviewable problem before us, for there are not involved in this writ of error any questions of law. Hence, a reversal of the judgment reflects action on our part in disregard of the dictate of the cited statute and the rule of precedents.

There is evidence in the record, and there are inferences which may properly be deduced from such evidence, substantiative of the findings of the Referee, and confirmed by the Commission. Unless some error of law is made manifest, a case reaching us in such posture is not vulnerable to attack.

The administrative findings that, insofar as claimant was affected, the corporate existence of The General Plant Protection Corporation and the partnership of The General Plant Protection Company as distinct entities was ineffectual, were as reliably formed as anyone could ask a fact-finding agency to fashion. The historical development of these concerns; their interrelation and interrelated activities and practices, particularly the keeping of payroll records in, and the issuance of pay checks from, the accounting office in California for both firms; the fact that there was general agreement that the claimant and others knew not of the difference; and the fact that there was testimony which, if believed, indicated merely a transfer from Colorado to California of claimant's services for his employer, all permitted the Commission to properly find that there was practical identity between corporation and partnership. *Gutheil v. Polichio,* 103 Colo. 426, 86 P. (2d) 972; *Colorado Finance Co. v. B. F. Bennet Oil Co.,* 110 Colo. 1, 129 P. (2d) 299.

Putting on and taking off the corporate cloak, as the circumstances indicate an advantage to the corporation, is not a practice condoned by the law. Relief consonant with the facts presented to whatever tribunal hears the case will be granted, even though such action requires the tribunal to disregard the fiction of corporate entity.

That the claimant was being transferred from Colorado to California by the employer finds support in the evidence. That his services were not being terminated is also validly deducible from the record. I would say that the following findings should not be disturbed:

"The claimant herein was hired by The General Plant Protection Corporation at its Englewood, Colorado, office and began work September 17, 1957, at a stated salary of $86.40 per week. One of the conditions of employment was that the employees were subject to transfer, subsequently claimant and others were being transferred to company operation in California.

"The claimant and others testified that they were called into the office and given a 'Pep Talk' by one of the corporation's officials and given checks for $50.00 for traveling expenses (this being the former company's and present corporation's set fee for travel from Denver to the Lancaster, California, district) and told to report to Mr. Lewis H. Steinberger, Lancaster District Manager, on Monday, December 23, 1957.

\* \* \*

"Randall further testified that it had been the custom and practice after April 1, 1957, to transfer employees to the California district until well after December 22, 1957.

"George R. Rowbotham, Personnel Officer of The General Plant Protection Corporation, testified that it was his duty to personally supervise the preparation and maintenance of the employees' personnel records. He identified the claimant's record and stated that the record adduced at the hearing before this Commission (Exhibit 1) was not the true record. This witness testified that he had been ordered to make a 'Transfer Page' for

the claimant's personnel file, on or about December 20, 1957, to be included in the record, and that the same had been prepared and placed in claimant's folder. He stated that he was informed that these men were being transferred and that he had prepared his records accordingly. This witness testified that in March, 1958, (three months after the accident) he was ordered to remove the 'Transfer Pages' from the folder of the claimant and the other two men involved in the accident, and insert in lieu thereof 'Termination Sheets.' He stated that he was ordered to do this by Mr. Randall, his superior.

"Enough evidence has been introduced in the form of corporation records and testimony to satisfy the Referee that on December 22, 1957, this claimant was an employee of respondent corporation, and was sent to Lancaster, California, for the corporation and at the corporation's expense."

This leaves for consideration the activity of the claimant and his two companions at the time of the accident. The Commission found that these three individuals had arrived in Lancaster sometime between noon and 3:00 o'clock P.M. on December 22, 1957, had lunch, and that during the meal one of them had called Mr. Steinberger and made an appointment to see him later that afternoon. The Commission further found:

"Claimant and the two other employees then rode around to look the town over. Some time later and prior to the time of the appointment with Mr. Steinberger, the car in which claimant was riding was involved in an accident and all three of the occupants were seriously injured."

It also found "that the claimant was injured in an accident arising out of and in the course of his employment on December 22, 1957." It should be noted that the finding of the Commission is unclear as to what the claimant and his companions were doing at the time the accident occurred, except that they were in an automobile.

In reviewing the determination of the Commission we

should not, as the majority opinion does, draw inferences which would defeat the finding that the claimant was injured in an accident arising out of and in the course of his employment. It is just as logical to infer from the facts of this case that claimant and the other two men were on their way to meet Mr. Steinberger.

This inference could plausibly originate from testimony hereinafter quoted, and has acceptance in the case of *Comstock v. Bivens,* 78 Colo. 107, 239 Pac. 869. Without detailing the facts of that case, the Commission was confronted with a situation where it had no direct evidence of the intention of the claimant, a mail carrier, in driving his car from the post office to his home, and drew an inference which resulted in a determination that his accident arose out of and in the course of his employment.

This court, in making the statement that the three men were "killing time" at the time of the accident, is drawing an inference from evidence, which is an intrusion on the function of the Commission, whose province alone it is to consider, weigh, and infer from, evidence, and not an office of this court. In any event, the inference has less acceptability than the one hereinabove suggested, as a consideration of the evidence will reveal.

The statement of the majority is based upon the testimony of one Yost, one of the companions of the claimant. A reading of the testimony of Yost clearly indicates that the testimony relating to "killing time" refers to that time prior to having the car greased. Certain it is that the evidence is devoid of what the claimant and his companions were doing after they left the filling station around 6:00 or 6:30 P.M. Inferences as to what they were doing can be drawn, but this is a task which we should not undertake, except as such are legitimate and consistent with the Commission's determination. As aptly said by Mr. Justice Moore: "If the evidence, and the logical inferences therefrom, can be said to warrant a conclusion that the accident, within a reasonable

probability, resulted in the disability, the claimant is entitled to compensation, *since he was successful before the commission.*" *Industrial Commission v. Royal Indemnity Co.,* 124 Colo. 210, 236 P. (2d) 293. (Emphasis supplied.)

Yost testified that they had lunch sometime between 1:00 and 3:00 o'clock, after which they "went out and looked over the town a little bit and [Stimac] decided he wanted his car greased, so we took it in there and he left his car. We started to go in mine. *That is the last I remember.*"

A further colloquy also took place:

"Q. You were just looking around the town? A. Killing time, yes. Q. Were you going anywhere? A. Not that I remember. Q. Were you looking for Mr. Steinberger then? A. No, I don't think so. As I told you, I don't remember nothing after leaving the filling station. Q. You don't remember anything after leaving the filling station? A. No."

The evidence is very clear that all these men were very seriously hurt in the accident and that none of them remembered anything of what happened after they left the filling station where Stimac's car was to be greased. This occurred about 6:00 or 6:30 in the evening. If an inference can be drawn that these men were still "killing time," the drawing of that inference would be a function solely for the Commission, and would be contrary to that actually drawn by the Commission in its finding that the men were at that time injured in an accident arising out of and in the course of their employment. If this case must be reversed, it should be for the sole purpose of permitting the Commission to draw the inference and not for us to exercise a power with which we are not invested.

In sustaining the Commission, the inference that the men were on their way to see Mr. Steinberger should be accepted. If accepted, then the cases of *Alexander v. Industrial Commission,* 136 Colo. 486, 319 P. (2d) 1076,

and *Lyttle v. State Fund,* 137 Colo. 213, 322 P. (2d) 1049, are controlling.

I would vote to affirm the judgment.