**Glee M. MORRISON and Val K. Morrison, Petitioners,**

v.

**Naomi BRADLEY, Respondent.**

No. 80SC300.

Supreme Court of Colorado,
En Banc.

Dec. 6, 1982.

Richard L. Ott, Kathleen M. Cronan, Margaret D. Keck, Denver, for petitioners.

Susan E. Perry, Denver, for respondent.

LEE, Justice.

We granted certiorari to review the court of appeals' decision in *Glee M. Morrison and Val K. Morrison v. Naomi Bradley,* 622 P.2d 81 (Colo.App.1980). We reverse the order remanding the case for a retrial on the issue of damages.

The action for wrongful death was brought by Glee and Val Morrison, sister and brother, against respondent Naomi Bradley, who admittedly shot and killed their father, Keith Morrison, on September 20, 1976. At the time of his death, Keith Morrison was 54 years of age and had been living with and supporting his 19-year-old daughter Glee and his 16-year-old son Val. His wife had died of natural causes earlier that year. The petitioners sought compensatory damages for the pecuniary loss they

suffered as the result of their father's death. Section 13–21–202, C.R.S.1973.

The jury found in favor of the plaintiffs and awarded Glee Morrison $1,100 and Val Morrison $30,000 in compensatory damages. The jury also found the deceased, Keith Morrison, to have been 40 percent contributorily negligent and therefore the damage awards were reduced to $660 for Glee Morrison and to $18,000 for Val Morrison.

The respondent appealed on both the issues of liability and damages. The court of appeals affirmed on the issue of liability but reversed the award of damages to the petitioner Val Morrison, holding that the award was excessive. The court remanded for a new trial on the issue of damages only. The respondent does not assert error on the court of appeals' affirmance of the liability determination.

The facts giving rise to the wrongful death action are set forth in the opinion of the court of appeals and need not be restated here. *Morrison v. Bradley, supra.*

## I.

We first consider the petitioner Val Morrison's contention that the court of appeals improperly held the trial court committed reversible error in admitting the following testimony into evidence. The petitioner was permitted to testify over objection that his father had promised to pay for post-high school training as a heavy equipment operator and also promised to help pay for a 1978 truck for him, with the understanding the son would contribute amounts he saved from earnings at the racetrack where his father had also worked. The court of appeals ruled that this evidence "had no corroborating effect" when considered with evidence of the earning capacity of the deceased. The court ruled that on retrial, this evidence would not be admissible unless additional evidence were presented to show

that the father's financial ability was such that his probable future earnings would be consistent with his announced intent to provide for his son's post-high school education and the purchase of the 1978 truck. We do not agree with the court of appeals' holding.

It is clear that the father's statements to his son Val regarding future schooling costs and the purchase of the 1978 truck were hearsay evidence. Although at the time of the trial the *Colorado Rules of Evidence* had not been adopted, Colorado courts had adopted a common-law exception to the hearsay rule, which allows admission of evidence of a declarant's state of mind, including a design or plan.[1] *Alexander Film Company v. Industrial Commission,* 136 Colo. 486, 319 P.2d 1074 (1957); *Deane Buick Co. v. Kendall,* 160 Colo. 265, 417 P.2d 11 (1966); *see also People v. Madson,* 638 P.2d 18 (Colo.1981). Under this common law evidentiary rule the tests applied to admit evidence of design or plan are "a present existing state of mind, something said in the usual course of things under the circumstances, and under circumstances excluding an ulterior purpose." *Alexander Film Company v. Industrial Commission,* 136 Colo. at 491, 319 P.2d at 1077. The statements admitted in this case were indicative of the father's then existing state of mind to assist his son, were made for no ulterior purpose which would encourage fabrication, and were not so unusual as to lead to the conclusion that they were not made "in the usual course of things."[2] It is not unreasonable to view the declaration of intent as the sort of statement a father might normally make to his son upon his son's nearing high school graduation and voicing a desire to acquire post-graduate vocational training. Thus the criteria outlined in *Alexander, supra,* were met.

The state of mind exception to the hearsay rule is based upon the trustworthi-

---

1. We note that *C.R.E.* 803(3) tracks the common law definition of the state of mind exception.

2. The jury may have reasonably concluded that Keith Morrison wished to provide for his son

and that he indicated this to the son, especially in view of the recent death of his wife and the death of an older son, and further, in view of substantial cash gifts Morrison had made to his older daughter Glee earlier in 1976.

ness of such statements which is presumed due to their spontaneity. The rule requires that such declarations relate to a then existing state of mind and that they must have been made under circumstances indicating sincerity. *C. McCormick, Law of Evidence* § 295 (2d Ed. 1972); *Mutual Life Insurance Co. v. Hillmon,* 145 U.S. 285, 12 S.Ct. 909, 36 L.Ed. 706 (1892); *Deane Buick Co. v. Kendall, supra.*

■ The weight to be given the evidence is to be determined by the jury. The element of corroboration by evidence of the father's projected ability to earn goes to the weight of the evidence rather than its admissibility.

The language of the jury instruction given in this case, which the respondent did not challenge, charged the jury to assess the financial benefit "which the plaintiff might reasonably have expected to receive from [the father] had he lived . . . ." *C.J.I.* 10:3; *Espinoza v. O'Dell,* 633 P.2d 455 (Colo. 1981).

■ It was the function of the jury to place a "fair and just" dollar value on the pecuniary losses suffered by the son when his father died, based upon all evidence available relating to the father's life expectancy, his health and age, his ability to earn, the probable life expectancy of the plaintiff, and the disposition of the deceased to provide pecuniary assistance and aid to the plaintiff. *C.J.I.* 10:3; section 13–21–203, C.R.S.1973; *Pierce v. Conners,* 20 Colo. 178, 37 P. 721 (1894).

■ The respondent argues, and we agree, that these statements regarding the cost of post-high school training and the truck could not directly prove that the decedent would have complied with his promise had he lived. A promise to make a gift is not enforceable. However, the statements were circumstantial evidence tending to indicate the father's disposition to assist the child in the future. *See, e.g., Mutual Life Insurance Co. v. Hillmon, supra; Deane Buick Co. v. Kendall, supra.*

In our view the foundation requirements of the common law rule for admission of hearsay statements revealing the declarant's state of mind were sufficient to allow the jury to hear this evidence. Thus, the trial court did not err in admitting this testimony.

## II.

■ The court of appeals held that the award of damages to Val Morrison was excessive. Wrongful death damages are limited to the net pecuniary loss suffered by the survivor. *Kogul v. Sonheim,* 150 Colo. 316, 372 P.2d 731 (1962); *McEntyre v. Jones,* 128 Colo. 461, 263 P.2d 313 (1953). However, mere disagreement with the amount of damages awarded is not a sufficient ground to overturn an award of damages which is supported by competent evidence in the record. *Harvey v. Irvin,* 156 Colo. 391, 401 P.2d 266 (1965). It is the sole province of the jury to fix fair and just damages. *Kogul v. Sonheim, supra.* Only upon a showing of arbitrary or capricious jury action, or that the jury was swayed by passion or prejudice, should an appellate court overturn a jury verdict. *Peterson v. Shaffer,* 143 Colo. 138, 352 P.2d 281 (1962); *Dunham v. Kampman,* 37 Colo.App. 233, 547 P.2d 263 (1975), *aff'd,* 192 Colo. 448, 560 P.2d 91 (1977). No such showing was made.

■ To support the jury's verdict there must be some evidence to prima facie establish with a reasonable degree of certainty damages of pecuniary loss flowing from the death. *Herbertson v. Russell,* 150 Colo. 110, 371 P.2d 422 (1962). In the present case evidence was presented which showed that the father earned over $12,000 per year from two racetrack jobs; that in addition he received a four-bedroom house rent-free, for which all utilities were paid; and that he was provided with a company truck with gas and insurance paid by the company which was occasionally used by his family. Further, the father owned several pieces of real estate and had over $18,000 in a credit union account which had been accumulated during his late wife's teaching career. The father also participated in a profit sharing program with his employer. At the time of his death, he was 54 years of age and in

good health, with an actuarially projected life expectancy of 20.47 years. He had been employed by the racetrack for 12 years as groundskeeper and superintendent. In the off-season he was employed by another racetrack as a lure operator. Testimony was given that had he remained healthy, he would not have been forced to retire until he was over seventy.

The petitioner, who was sixteen at the time of his father's death, testified that he had a good relationship with his father, and that his father's relationship to his children had grown closer after an older son had died in 1971. He testified that his father paid for 100 percent of his living expenses, had helped with his emotional problems, had provided companionship to his son, watched television with him, and that they had often gone out to eat together.

The petitioner testified that his father had always been generous with gifts, and his sister, Glee Morrison, agreed. She testified that her father had purchased a $4,200 car for her and had given her approximately $3,000 after she married in 1976. She also testified that her father had agreed to pay for a subsequent divorce from her husband, who was also living in the family home and was being supported by him.

The petitioner testified regarding his personal expenses after his father died and prior to trial, while he finished high school. He also testified regarding his father's stated intent to pay for his schooling as a heavy equipment operator, including books, lodging, tuition, and living expenses, if he were unable to live at home. The petitioner stated that he was investigating trade schools to learn to be a heavy equipment operator, but that he had not enrolled. He testified regarding his father's promise to help him buy a 1978 truck. He stated that he had purchased the truck for $9,000 and that at the time of his father's death he had saved $3,000 toward the purchase by working at a racetrack job his father had procured for him.

The personal representative of the father's estate testified regarding costs of estate settlement of approximately $10,000, including attorney's fees, burial expense, and the personal representative's fee. The personal representative also acted as guardian ad litem and he testified regarding expenditures made for Val's support, medical expenses, rent, food, clothing, and insurance, guardian ad litem and attorney's fees, which totalled over $20,000 in the period between his father's death and the date of trial. At the commencement of the trial, the petitioner had a life expectancy of 52.19 years. There was evidence that the father had provided all living expenses for his son, and that he had the ability to continue to do so. There also was evidence that Val could have continued to live with his father and receive assistance as long as he desired.

█ In our view, the evidence presented a prima facie case for pecuniary loss due to the death of the father. *Herbertson v. Russell, supra.* The jury could have reasonably concluded that the pecuniary loss suffered by the petitioner because of the death of his father amounted to $30,000. Based solely upon evidence of living expenses for the period after the death of his father and prior to trial, it was not unreasonable to conclude that Val's pecuniary loss could have exceeded $30,000. Moreover, the considerable cash and property gifts the father made to Glee Morrison in the year of his death lend credibility to the evidence presented that the father had a disposition to aid his children financially. We hold that the evidence amply supported the jury verdict.

Accordingly we reverse the judgment of the court of appeals.